**HYDE CONSTRUCTION COMPANY, Inc., Plaintiff,**

v.

**KOEHRING COMPANY, Defendant.**

**Vardaman S. DUNN, Plaintiff,**

v.

**KOEHRING COMPANY, Defendant.**

**Civ. A. Nos. 4478, 4524.**

United States District Court,
S. D. Mississippi,
Jackson Division.

Dec. 10, 1969.

William E. Suddath, Jr., Watkins & Eager, Vardaman S. Dunn, Cox & Dunn, Jackson, Miss., for plaintiffs.

Scott Tennyson, Tennyson & Britt, Dan H. Shell, Jackson, Miss., for defendant.

MEMORANDUM OPINION ON MOTIONS OF DEFENDANT TO DISMISS FOR LACK OF JURISDICTION OR IN LIEU THEREOF TO QUASH PROCESS AND TO TRANSFER CAUSE OF ACTION

NIXON, District Judge.

These two separate cases, being considered together on these Motions by

agreement of counsel and with the consent of the Court, are suits for damages filed by the plaintiffs against the defendant based upon what plaintiffs contend was defendant's abuse of process of the United States District Court for the Northern District of Oklahoma.

In order to fully understand the positions of the parties in support of and in opposition to these motions it is necessary to review in some detail the history of the protracted litigation which "hatched" these suits. The plaintiff in Civil Action No. 4478, Hyde Construction Company, Inc., hereinafter referred to as "Hyde" is a Mississippi Corporation domiciled in Jackson, Hinds County, Mississippi. The plaintiff in Civil Action No. 4524, Vardaman S. Dunn, is a resident citizen of Jackson, Hinds County, Mississippi and a practicing attorney at law, who during the periods of time hereinafter referred to, was acting as attorney of record for Hyde in its litigation against the defendant, Koehring. The defendant in both actions, Koehring Company, hereinafter referred to as "Koehring" is a corporation organized and existing under the laws of the State of Wisconsin with its domicile and principal place of business located at Milwaukee, Wisconsin. The parties agree that Koehring was licensed to do business in Mississippi on January 9, 1964 and that it appointed the C. T. Corporation System as its resident agent for service of process in accordance with Mississippi law;[1] furthermore, that it remained licensed to do business in Mississippi having transacted business therein until September 12, 1968 at which time it withdrew in compliance with Section 5309–234, Miss.Code of 1942, Rec., having applied for and received a Certificate of Withdrawal from the Secretary of State of the State of Mississippi. In accordance with Para. (d) of 5309–234, the defendant in its application revoked the authority of its resident agent in this State to accept service of process and consented "that service of process in any action, suit or proceeding based upon any cause of action arising in this state during the time the corporation was authorized to transact business in this state may thereafter be made on such corporation by service thereof on the Secretary of State."

The plaintiff, Hyde, during the times referred to herein was engaged in the construction of public roads, dams, levees and spillways, and the defendant, Koehring, was in the business of manufacturing and selling construction equipment of various types, including concrete mixing and processing plants. In the latter part of 1959 Hyde was awarded a contract with the United States for the construction of a spillway for Keystone Dam on the Arkansas River in the State of Oklahoma and the performance of this contract required the acquisition and installation of a large concrete mixing and cooling plant for production of the necessary concrete to perform the construction work. On February 5, 1960, a contract of sale and purchase was entered into between Hyde as purchaser and Koehring as manufacturer and seller for the required mixing and cooling plant. In this sales contract Koehring gave certain guarantees concerning the operation of the plant and its production capacity. On September 27, 1961 Hyde filed suit in the United States District Court for the Southern District of Mississippi against Koehring for recovery of damages for breach of the above contract, alleging malfunction of the concrete mixing and cooling plant.

Koehring filed a Motion to Dismiss the above action for lack of jurisdiction and moved to transfer the cause to the United States District for the Northern District of Oklahoma. From an Order of the United States District Court for the Southern District of Mississippi denying the Motion to Dismiss and the Motion to Transfer, Koehring appealed to the United States Court of Appeals for the Fifth Circuit which reversed the

---

1. Section 5309–228, Miss.Code 1942, as amended 1962.

District Court and remanded the case with instructions that it be transferred to the Northern District of Oklahoma, pretermitting a decision on whether the trial court below had personal jurisdiction over the defendant.[2] In the meantime, subsequent to the time that Koehring filed Motions to Dismiss and to Transfer and prior to a ruling thereon, Hyde filed the same action against Koehring in the Chancery Court of Hinds County, Mississippi.

The above suit in the Chancery Court of Hinds County began on March 11, 1964 after Koehring had appeared generally and answered the Complaint therein and had utilized the process of that Court for gathering evidence by prepounding interrogatories to Hyde. The Chancellor overruled the defendant's Motion for a Continuance. In the meantime, Koehring took what is alleged by plaintiffs in these cases to be the first step constituting an abuse of process, namely, on March 11, 1964 it applied for and obtained a restraining order from the Oklahoma District Court which purported to command the state court parties and their attorneys to refrain from proceeding with the trial of the suit in the Chancery Court. This Order was served as a Writ of Injunction. Despite the service thereof on the parties within the State of Mississippi, the Chancery Court and the plaintiffs ignored the Temporary Restraining Order. The trial in the Chancery Court of Hinds County, Mississippi was concluded on March 25, 1964, when Hyde was awarded a judgment against Koehring for over $486,000.00. This Decree of the Chancery Court was affirmed in part and reversed in part by the Mississippi Supreme Court which rendered judgment in favor of Hyde against Koehring in the sum of $409,560.61 plus 6% interest thereon from April 1, 1963.[3] The Chancery Court of Hinds County also entered

a Decree enjoining Koehring from proceeding in the Oklahoma Federal Court, but this Decree was reversed by the Mississippi Supreme Court.[4]

On March 12, Koehring petitioned the Oklahoma U. S. District Court to cite the plaintiffs herein, Hyde and Dunn, for contempt; and that Court issued an Order directing both of the plaintiffs, Hyde and its attorney, Dunn, to appear before the Federal Court in Tulsa, Oklahoma on March 14, 1964 to show cause why they should not be found in contempt of court and punished therefor. Process issued pursuant to this show cause order and was served on both plaintiffs within the State of Mississippi by United States Marshals. At the contempt hearing, other counsel briefly appeared for Hyde, but Dunn did not appear. The Court nevertheless entered findings holding Hyde and Dunn in civil contempt and on that same date signed an "Order of Arrest" directed to the United States Marshal commanding the arrest of plaintiff herein, Vardaman S. Dunn. and his transportation forthwith before the United States District Court for the Northern District of Oklahoma in Tulsa, Oklahoma. This Order was received by the United States Marshal in Jackson, Mississippi on March 16, 1964 on which date it was served on the plaintiff, Dunn, who was arrested in Jackson and released only when an Order and Writ of Habeas Corpus was issued by United States District Judge S. C. Mize for the Southern District of Mississippi in order that Mr. Dunn might continue with and conclude the Chancery Court trial in progress. Plaintiffs further allege that since the above mentioned processes did not succeed in interrupting· and delaying the state court trial of the above controversy, which they were intended to accomplish, that the defendant Koehring in order to "delay or completely frus-

2. Koehring Co., et al. v. Hyde Construction Co., Inc., 324 F.2d 295 (C.A. 5, 1963).

3. 253 Miss. 675, 178 So.2d 857; 254 Miss. 214, 182 So.2d 580 (On Motion to Correct Judgment).

4. 253 Miss. 675, 178 So.2d 857.

trate the State Court trial, sought to use other Federal processes to require certain witnesses then known to be standing by to testify in the State Court to appear as witnesses in the State of Oklahoma, a distance of over 500 miles from Jackson, Mississippi; that this forced plaintiffs to seek and obtain temporary relief both in the U. S. District Court in Mississippi, and in the State trial court, in order that the trial in the Chancery Court might proceed." On April 10, 1964 Judge Mize entered an opinion in which he found that plaintiff, Dunn, had not acted out of contempt or lack of respect, and held, inter alia, that Koehring failed to establish a prima facie case entitling it to injunctive relief in the Oklahoma District Court; and further, that the U. S. District Court in Oklahoma was prohibited by 28 U.S.C. sec. 2283 from enjoining the Mississippi state court proceedings. On April 21, 1964 the U. S. District Court in Mississippi entered an Order declaring the temporary restraining order and the Order of Arrest issued by the Oklahoma District Court to be void and discharging Mr. Dunn from the custody of the U. S. Marshal. Thereupon the Marshal appealed to the United States Court of Appeals for the Fifth Circuit which reversed the lower court declaring that the Oklahoma Federal Court had jurisdiction and that the Mississippi District Court's Order was appealable.[5] In reversing the Mississippi U. S. District Court the Fifth Circuit held that the "Show Cause Petition" charged a wilful violation of the Restraining Order, indicating an intention to prosecute for *criminal* contempt, inasmuch as the affidavit accompanying the petition set forth in detail the acts of Dunn which were alleged to constitute a deliberate violation of the Restraining Order and the language used in the petition for the Order and the Order itself which was served on Dunn on March 13, 1964 in Jackson, Missis-

sippi, were clearly sufficient to inform him that *criminal* contempt was charged. Furthermore, in opening the proceedings on March 14, 1964 Judge Barrow announced that "this is a *criminal* contempt proceeding." See Stewart v. Dunn, supra, at pages 599–600. (Emphasis supplied).

The United States District Court for the Northern District of Oklahoma entered a judgment denying the Motion by Hyde to dissolve the injunction issued which restrained it from enforcing its judgment against Koehring obtained in the Mississippi State Courts. On Appeal by Hyde to the Court of Appeals for the Tenth Circuit the lower court's injunction was dissolved, the judgment for civil contempt was vacated and the case remanded for further proceedings.[6] The Tenth Circuit held that since both the State and Federal proceedings were in personam actions they could proceed simultaneously and that the Federal Court was powerless to enjoin the State proceeding under 28 U.S.C. sec. 2283; that Koehring had filed a general appearance in the Chancery Court of Hinds County, had appealed the adverse judgment therein to the Mississippi Supreme Court and in that appeal litigated the right of the State Court to proceed in the face of the injunction; that the Mississippi Supreme Court concluded that it had jurisdiction to proceed and that Koehring did not seek review of this decision in the Supreme Court of the United States, and thus it became final; that under the principle of res judicata the question of jurisdiction was finally decided by the Mississippi Supreme Court. Furthermore, the Appellate Court held that the civil contempt order was so related to the injunction that both could be considered on an appeal and that the adjudication for civil contempt and the penalty imposed therefor could not stand in view of its above conclusion.

The U. S. District Court in Oklahoma entered a judgment finding the defend-

---

5. Stewart v. Dunn, 363 F.2d 591 (C.A. 5, 1966).

6. Hyde Construction Co., Inc. v. Koehring Co., 388 F.2d 501 (C.A. 10, 1968).

ant therein, plaintiff herein, Dunn, guilty of criminal contempt for violation of the Restraining Order. On Appeal, the United States District Court for the Tenth Circuit reversed this judgment and remanded the case to the District Court for its determination of whether it would hold Dunn in criminal contempt, in view of the fact that the Order which he was convicted of violating was invalid in view of its above stated opinion.[7] On remand, the District Court dismissed the criminal action against Dunn by Order of August 27, 1968 "in the interest of justice," despite the allegation and claim by plaintiff Dunn herein that Koehring through its attorney insisted that he be jailed. The litigation in the Federal Court in Oklahoma concerning the misuse and abuse of the injunctive and other restraining processes was finally terminated on May 6, 1968 when an Order was entered by the United States Supreme Court in Cause No. 1256 dismissing Koehring's petition for certiorari to review the Decision and Order of the Court of Appeals.

Plaintiffs contend that despite the final adjudication by the U. S. Court of Appeals for the Tenth Circuit on January 24, 1968, the injunctive order was wrongfully procured by Koehring and thus invalid. They also allege that Koehring promoted, encouraged and actually participated in a subsequent criminal prosecution of Hyde in Cause No. 14,324 in the United States District Court for the Northern District of Oklahoma which was a criminal contempt action based upon wrongful procurement of the restraining order against the Mississippi Courts and in which Koehring sought and claimed entitlement to the levy of a criminal fine to be made payable to Koehring which in effect amounted to the misuse and abuse of criminal processes of the Federal Courts for the wrongful collection of an alleged civil debt which was known to be invalid. This action was finally dismissed by the Oklahoma District Court on March 4, 1969.

These two cases were filed by the plaintiffs Hyde and Dunn against the defendant Koehring. The Motions filed in both of these cases by the defendant to Dismiss for Lack of Jurisdiction will be first discussed by this Court. Both plaintiffs instituted these suits by filing Declarations in the Circuit Court for the First Judicial District of Hinds County, Mississippi. After removal thereof by the defendant, each plaintiff filed an "Amended Complaint". In their declarations filed in the State Court, both plaintiffs predicated jurisdiction of the Mississippi courts on the basis of Section 5309–234, Miss.Code of 1942, Rec., by serving the Secretary of State of the State of Mississippi. In their "Amendments to Complaint" filed in these two cases both plaintiffs further contend that this Court has in personam or territorial jurisdiction over the defendant Koehring on the following additional bases: (1) that the tort which is the basis of this cause of action was committed by the defendant in whole or in part in the State of Mississippi against a resident thereof and thus the defendant has appointed the Secretary of State of the State of Mississippi as its process agent under and pursuant to Section 1437, Miss.Code of 1942, Rec., the "Long Arm Statute"; [8] (2) that subsequent to

---

7. Dunn v. United States, 388 F.2d 511 (C.A. 10, 1968).

8. "(a) Any nonresident person, firm, general or limited partnership, or any foreign or other corporation not qualified under the Constitution and laws of this State as to doing business herein, who shall make a contract with a resident of this State to be performed in whole or in part by any party in this State, or who shall commit a tort in whole or in part in this State against a resident of this State, or who shall do any business or perform any character of work or service in this State, shall by such act or acts be deemed to be doing business in Mississippi. Such act or acts shall be deemed equivalent to the appointment by such nonresident of the Secretary of State of the State of Mississippi, or his successor or successors in office, to be

its alleged withdrawal from the State of Mississippi on September 12, 1968, the defendant has nevertheless continued doing business in the State of Mississippi and is still doing business herein; and furthermore, the defendant, prior and subsequent to September 12, 1968, has had distributor representatives within Hinds County, Mississippi, identified as Allied Equipment, Inc. and Equipment, Inc., who are agents of the defendant; and thus, defendant may be served by service of process upon them. If mistaken, plaintiffs contend that process of this Court may be served upon the defendant by serving the C. T. Corporation System of Jackson, Hinds County, Mississippi as the process agent representing defendant at the time of the actions giving rise to the present suits.

The question to which this Court now addresses itself is whether it has in personam or territorial jurisdiction over the defendant in either or both of these cases under the provisions of Sections 1437 and 5345, "The Doing Business Statute",[9] by virtue of the fact that, according to plaintiffs, Koehring committed a tort, in whole or in part, in Mississippi, and thus appointed the Secretary of State as its resident agent for service of process under the provisions of Section 1437 and/or while not qualified in Mississippi, Koehring is in fact doing business in Mississippi and is thus amenable to process under Section 5345 which provides that a foreign corporation may be sued "if found doing business in the State of Mississippi regardless of whether the cause of action arose out of the doing of business in Mississippi or not," and that service may be had under the provisions of 5346[10] on

the true and lawful attorney or agent of such nonresident upon who all lawful process may be served in any actions or proceedings accrued or accruing from such act or acts, or arising from or growing out of such contract or tort, or as an incident thereto, by any such nonresident or his, their, or its agent, servant or employee. The doing of such business, or the engaging in any such work or service in this State, or the making of such contract, or the committing of such tort in this State, shall be deemed to be a signification of such nonresident's agreement that any process against it which is so served upon the Secretary of State shall be of the same legal force and effect as if served on the nonresident at its principal place of business in the state or country where it is incorporated and according to the law of that state or country.

(b) All civil actions for the recovery of damages brought against a nonresident of the State of Mississippi may be commenced in the county in which the action accrued or where the plaintiff then resides or is domiciled, except as otherwise provided by law. Service of process may be had in any county of the State where the defendants, or any of them, may be found, except when elsewhere provided by law for service upon the Secretary of State.

(c) The provisions of this act as they apply to an accrual of a cause of action will be in full force and effect as to any such accrual if the cause of action accrued either before or after passage of this act."

9. "Any corporation claiming existence under the laws of any other state or of any other country foreign to the United States, found doing business in this state, shall be subject to suit here to the same extent that corporations of this state are, whether the cause of action accrued in this state or not."

10. "Process may be served upon any agent of said corporation found within the county where the suit is brought, no matter what character of agent such person may be; and in the absence of an agent, it shall be sufficient to serve the process upon any person, if found within the county where the suit is brought, who represented the corporation at the time of the transaction out of which the suit arises took place, or if the agency through which the transaction was had be itself a corporation, then upon any agent of that corporation upon whom process might have been served if it were the defendant. The officer serving the process shall state the facts, upon whom issues, etc., in his return, and service of process so made shall be as effectual as if a corporation of this state were sued, and the process has been served as required by law; but in order that defendant corporation may also have effectual notice, it shall be the duty of the clerk to immediately mail a copy

any agent of the foreign corporation within the State.

It should first be noted that Section 1437 is inapplicable to any act of the defendant Koehring between the periods of January 9, 1964 and September 12, 1968 because of the fact that this statute refers, in the following language, to nonresident persons, firms, partnerships, or foreign or other corporations, *"not qualified under the Constitution and laws of this State as to doing business herein * * * "* (Emphasis supplied). Therefore, in considering whether in personam or territorial jurisdiction has been acquired in these cases over the defendant, Koehring, it is necessary for this Court to consider only acts, if any, of the defendant Koehring within the State of Mississippi which either constitute a tort, performance of any contract in whole or in part, or the "doing of business" within the State of Mississippi. At the same time, Section 5345, the "Doing Business Statute" requires as a prerequisite to the acquisition of territorial jurisdiction over a nonresident or foreign corporation that it be "found doing business in this state" and if so, it apparently may be subjected to jurisdiction of the State of Mississippi "whether the cause of action accrued in this state or not."

The defendant Koehring is a foreign corporation organized and existing under the laws of the State of Wisconsin, with its domicile and principal place of business located at Milwaukee, Wisconsin. As stated above, it domesticated itself by qualifying to do business in the State of Mississippi on January 9, 1964 and immediately did business herein until September 12, 1968 when it formally and legally withdrew from this State and revoked the appointment of C. T. Corporation System as its agent for service of process, all in accordance with Section 5309–234 of the Miss.Code 1942, Rec.

In order to ascertain whether Koehring has been and is doing business within the State of Mississippi since September 12, 1968 it is necessary to look to the evidence before the Court consisting of affidavits, answers to interrogatories, and contracts entered into between the defendant and resident distributors with whom it deals within the State of Mississippi. The affidavit of Vincent R. Peterson, Vice President for Finance of Koehring Company, discloses that Koehring has not maintained any office or telephone listing or lease space for storage or otherwise and has had no designated agents or employees residing within the State of Mississippi during the period of time subsequent to September 12, 1968; further, Koehring has maintained no stock or goods, has had no bank account in Mississippi and has not had any directors meetings, company meetings or employee meetings of any kind therein. Its activities or contacts within the State of Mississippi have been as follows: each month one or two of its employees from as many as four of its divisions visit Mississippi to assist distributors with Koehring products and assist in the repair thereof; it has ten distributors within the State of Mississippi, most of which were its distributors prior to its withdrawal; it has no subsidiaries within the State of Mississippi; since September, 1968 its equipment sales in Mississippi up to August 16, 1969 amounted to $979,149.00; its repair services amounted to $4,500; and its income from repair services, $201.00; two of its divisions have had certain equipment in Mississippi including harvesting equipment valued at approximately $3,000 on loan to Mississippi State University, a $95,000 dragline on loan to a contractor in Vicksburg for use while a similar machine was being re-

of the process to the home office of the corporation by registered letter, the postage and fees of which shall be taxed as other costs. The clerk shall file with the papers in the cause a certificate of the

fact of such mailing, and make a minute thereof upon the docket, and no judgment shall be taken in the case until thirty days after the date of such mailing."

paired, and a $22,656.00 dragline in the hands of Allied Equipment, one of its distributors; those sales from September to the end of 1968 within the State of Mississippi were $108,644.00 and from January to June, 1969 were $433,693.00, a slight increase over its sales from January to September 1968, namely $388,647.00; Dalrymple Equipment Company, one of the defendant's distributors in Mississippi who buys and resells Koehring's merchandise, owes to defendant at least $32,034.54 and has in its possession eleven pieces of Koehring's heavy equipment; that in 1969 defendant is a creditor, secured by Security Instruments filed during 1969 in Mississippi under the Mississippi Uniform Commercial Code, securing at least $206,000 of debts owing to it by Mississippi dealers; that neither the defendant nor any of its divisions has paid taxes to the State of Mississippi or any political subdivision since January 1, 1969.

■ In addition to the above, the defendant has produced copies of 12 of its written agreements with Mississippi companies acting as distributors of Koehring equipment which are variously called "Sales and Service Agreement" and "Distributors Agreement". In order to determine whether Koehring is "doing business" in Mississippi under such circumstances as to vest in this Court jurisdiction over it, the Court must look closely to the contracts entered into between the defendant manufacturer, Koehring, and its Mississippi distributors, because these contracts are very important on the issue now being considered. Jarrard Motors, Inc. v. Jackson Auto & Supply Co., Inc. and Lott, 237 Miss. 660, 115 So.2d 309 (1959). Each case in which in personam or territorial jurisdiction is challenged must be decided upon its own peculiar facts. Republic-Transcon Industries, Inc. v. Templeton, 253 Miss. 132, 175 So. 2d 185 (1965); Jarrard Motors, Inc. v. Jackson Auto & Supply Co., Inc., *supra*. The contract between Schield Bantam Division of Koehring Co. and Allied Equipment Co., which is fairly typical of the contracts in question, provides, among other things, the following: Koehring fixes the territory within which Allied may sell its products; fixes the prices to be paid by Allied for its equipment and reserves the right to change the prices without notice; Allied agrees to pay all taxes which Koehring may owe to the State of Mississippi or any city by reason of the manufacture or sale of equipment covered in the agreement; Allied agrees to maintain such stock of machines and parts as Koehring may determine to be adequate; Allied agrees to maintain a place of business suitable to Koehring; Allied agrees with Koehring to display, demonstrate and maintain and service Koehring products; Allied must maintain an adequate staff of salesmen and mechanics; Allied shall advertise Koehring products, however Koehring does not control or prescribe the method of advertisement as in *Jarrard;* Allied must maintain mailing lists of customers of Koehring products; it must keep records of the names and addresses of the owners of Koehring equipment and make such lists available to Koehring; it must confirm, in writing, all sales of Koehring machinery; it shall inspect and start all Koehring equipment and instruct purchasers in its use; it requires Allied to field service and check all new Koehring equipment in its territory and file written reports thereon with Koehring; it requires Allied to provide the service and shop facilities and render service to the satisfaction of Koehring; it requires Allied to sell products warranted precisely as Koehring directs and is not liable if Allied otherwise warrants; it limits Allied's right to sell Koehring products unless the sale is to a customer who has a permanent office in Allied's assigned territory or the customer first puts the machine to use in the territory assigned to Allied; it requires Allied to furnish complete financial statements and maintain satisfactory sales records, and reserves the right to require Allied to show adequate proof of insurance coverage.

On termination of the agreement Allied is obligated to load, ship at its own expense and resell to Koehring all Koehring products at the price at which it sold to Allied or the then current prices fixed by Koehring, whichever is lesser. The contract further provides that it may be terminated at will at any time by either party thereto.

 In the absence of Mississippi jurisprudence defining the specific measurement of the Mississippi "Long Arm" Statute, and defining the term "Doing Business" within the State, this Court would probably hold that Koehring is subject to in personam or territorial jurisdiction of this State based on the recent leading decisions in this field. International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95, 161 A.L.R. 1057; McGee v. International Life Insurance Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957); Eyerly Aircraft v. Killain, 414 F.2d 591 (C.A.5, 1969). It is necessary however not only to determine whether the defendant has sufficient contacts within Mississippi to satisfy due process, which this Court here finds to be the case, but to also apply state law in the determination of this question, since a Federal Court in a diversity case is required under the doctrine of Erie R. R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, to give these statutes in question the same construction as does the highest court of the State of Mississippi. Eyerly Aircraft v. Killain, supra, 414 F.2d at p. 598 fn. 9; Walker v. Savell, 335 F.2d 536, 540 (C.A.5, 1964).

 It is well established that unless a nonresident corporation is found to be doing business within the State of Mississippi within the meaning of Section 5345 and/or 1437, process upon it cannot be effected under either secs. 1437, 1866 or 5346 of the Miss.Code. In Alabama, Tennessee and the Northern Railroad Co., et al. v. Howell, 244 Miss. 157, 141 So.2d 242 (1962), the Mississippi Supreme Court, in considering the effect and meaning of process statutes in the State of Mississippi as they related to Foreign corporations, stated:

"Whether the corporation was doing business within the state, and whether the person served was an authorized agent, are questions vital to the jurisdiction of the court * * * This statute presupposes a doing of business in Mississippi * * * If a foreign corporation is not doing business in Mississippi, is it suable in this State?"

The Mississippi Court then states, quoting from Arnett et al. v. Carol C. & Fred R. Smith, Inc., et al., 165 Miss. 53, 145 So. 638:

"By virtue of said Section [5345], foreign corporations are subject to suit in this state only when 'found doing business in the state,' and therefore as against the appellant corporation the circuit court of Lee County was without territorial jurisdiction of the cause of action."

In the *Alabama, Tennessee case* the Court further held that the jurisdiction conferred upon courts by Section 5345 only embraces foreign corporations doing business in the State of Mississippi. Thus Sections 1866, 5345 and 5346 must be read together and this reading leads to the inescapable conclusion that effective process under all of these statutes presupposes a factual determination that the foreign corporation is doing business in the State of Mississippi. Likewise, Section 1437 must also be read with Section 5345 in a situation where no authorized agent of a foreign corporation can be found in this State.

It is necessary therefore for this Court to determine whether the defendant corporation is or was at the crucial time "doing business" within the State of Mississippi, within the meaning of Sections 1437 and 5345 of the Miss.Code, because if it is or was not, then no process statute, including sections 1866, 1437 or 5346, confers in personam or territorial jurisdiction of this Court over it.

██ It is first necessary to examine Section 1437 of the Miss.Code subse-

quent to its amendment which became effective on July 1, 1964 and Mississippi Supreme Court decisions construing and applying this statute which controls the acquisition of jurisdiction over nonresident defendants, including foreign corporations, within the State of Mississippi, and which as amended, is also referred to as the "Long Arm" Statute. Also, section 1437 must be read in conjunction with section 5345, which specifically deals with jurisdiction over foreign corporations "doing business" in the State of Mississippi. For a history of this statute prior to its amendment see Walker v. Savell, 335 F.2d 536 (C.A. 5, 1964). See also Lee v. Memphis Publishing Co., 195 Miss. 264, 14 So.2d 351, 152 A.L.R. 1428; Davis-Wood Lumber Co. v. Ladner, 210 Miss. 863, 50 So.2d 615 (1951); Jarrard Motors, Inc. v. Jackson Auto & Supply Co., Inc., *supra;* Livestock Services, Inc. v. American Cyanamid, 244 Miss. 531, 142 So.2d 210 (1962); Century Brick Corp. of America v. Carroll, 247 Miss. 514, 153 So.2d 683 (1963). The 1964 Amendment to Section 1437 apparently lengthened the "territorial jurisdiction arm" by the addition of two bases for acquiring jurisdiction of a foreign corporation or entity in addition to the previous requirements that the defendant must have certain "minimal contacts" with the State, and the assumption of jurisdiction must not offend "traditional notions of fair play and substantial justice," these being: (1) if it committed a tort in the state against a resident of the state, or (2) made a contract with a state resident, some part of which was to be performed in the state. After the 1964 amendment became effective, the Mississippi Supreme Court handed down its landmark decision in Mladinich v. Kohn, 250 Miss. 138, 164 So.2d 785 (1964). The Court referred to the amendment which had been enacted but had not yet become effective, and utilized this decision to lay down the ground rules for the application of the amended and broadened statute. See Miss. Defense Lawyers' Journal, "How Long the Arm",

Vol. 5, p. 45 and 27 A.L.R.3rd, pp. 463–465. In the *Mladinich* case the Court held that in order to subject a nonresident to jurisdiction in the State of Mississippi, in addition to the requirements that it have certain "minimal contacts" with the forum state, and that assumption of jurisdiction would not offend "traditional notions of fair play and substantial justice", that there are three other basic factors which must be present and coincide, namely: (1) the nonresident defendant or foreign corporation must purposefully do some act or consummate some transaction in the forum state; (2) the cause of action must arise from, or be connected with, such act or transaction; and (3) the assumption of jurisdiction in the forum state must not offend traditional notions of fair play and substantial justice, consideration being given to the quality, nature, and extent of the activity in the forum state, the relative convenience of the parties, the benefits and protection of the laws of the forum state afforded the respective parties, and the basic equities of the situation. These necessary and essential prerequisites to the acquisition of jurisdiction must still be present and coincide today in order for the courts within this state to acquire territorial jurisdiction, as is apparent from decisions recently handed down by the Mississippi Supreme Court. Hilbun v. California-Western States Life Insurance Co., Miss., 210 So.2d 307 (1968); Breckenridge v. Time, Inc., 253 Miss. 835, 179 So.2d 781 (1965); Republic-Transcon Industries, Inc. v. Templeton, *supra.*

Either the jurisdictional arm of section 1437 as amended is not as long as it appears in its "legislative sleeve" or the Mississippi Supreme Court has shortened it by "judicial surgery" to a length shorter than the permissible constitutional reach. In view of the fact that it is not necessary for this Court in this diversity case to engage in "rational divination" on this question because of the clear decisions of the Mississippi Supreme Court establishing the

above prerequisites, it now devolves upon this Court to apply the facts, as it finds them, to the law, in order to resolve the jurisdictional question.

 Neither the mere fact that Koehring, the manufacturer of equipment, sold its products to Mississippi distributors or wholesalers, nor the fact that Koehring had employees on an average of 17 to 18 per year visiting within this State to give assistance to distributors in the sale of equipment manufactured by it and to help repair and adjust this equipment, standing alone, would compel a finding that it is or was "doing business" within the State of Mississippi under the provisions of sections 1437 or 5345. See Lee v. Memphis Publishing Co., *supra;* J. R. Watkins Co. v. Flynt, 220 Miss. 871, 72 So.2d 195 (1954); North American Mortgage Co. v. Hudson, 176 Miss. 266, 168 So. 79 (1936); Livestock Services, Inc. v. American Cyanamid Co., *supra;* Walker v. Savell, *supra.* Furthermore, comparing the contracts entered into between Koehring and its distributors in Mississippi, the provisions of the typical one which is set out hereinabove, do not quite equate those found by the Court in Jarrard Motors, Inc. v. Jackson Auto & Supply Co., Inc. and Lott, *supra* to have given Jarrard almost absolute control over the method and manner of doing business by its distributors and thus lead to the inescapable conclusion that Jarrard was doing business in the State of Mississippi. However, this Court finds and is of the opinion that taking into consideration all of the above stated various activities which Koehring has engaged in and is engaging in in the State of Mississippi, including the fact that it has 10 distributors herein, sells a considerable amount of equipment to them, sends an average of 17 to 18 employees into Mississippi each year to give assistance to distributors in the sale of equipment manufactured by it and to help repair and adjust this equipment, has several pieces of its equipment operating in the State of Mississippi, has a great volume of sales almost equal to or exceeding those prior to the time it "withdrew" from Mississippi, extends and secures credit within this State, and its contracts with its distributors does give it a considerable amount of control over their activities, all taken together, lead this Court to the inescapable conclusion that Koehring is doing and has been doing business in the State of Mississippi since September 1968 within the meaning of the law, although this Court recognizes that its maintaining or defending any action or suit, including the present suit, shall not be considered as transacting business in Mississippi. Sec. 5309–222, Miss.Code, 1942, Rec.; Century Brick Corp. of America v. Carroll, *supra.* The United States Supreme Court, in McGee v. International Life Insurance Company, *supra,* which recognized the increasing trend of the Courts to hold a nonresident liable locally under the interlocking activities of enterprises in doing business in the various states, stated:

"Looking back over this long history of litigation a trend is clearly discernible toward expanding the permissible scope of state jurisdiction over foreign corporations and other nonresidents. In part, this is attributable to the fundamental transformation of our national economy over the years. Today many commercial transactions touch two or more States and may involve parties separated by the full continent. With this increasing nationalization of commerce has come a great increase in the amount of business conducted by mail across state lines. At the same time modern transportation and communication have made it much less burdensome for a party sued to defend himself in a State where he engages in economic activity."

 Having determined that the first criterion for conferring jurisdiction over nonresident corporations laid down in Mladinich v. Kohn, *supra,* has been met, that is, that Koehring "has purposefully [done] some act or consummate[d] some transaction in the forum state", and thus has done business in

the State of Mississippi, it is next necessary to determine whether the second required prerequisite of *Mladinich* has been satisfied, namely, whether the cause of action herein has "arisen from, or is connected with, such act or transaction." The answer to this question is in the negative, inasmuch as the alleged abuse of process did not arise from and is not connected with any of the acts or transactions carried on by Koehring in the State of Mississippi subsequent to September 12, 1968. If Koehring is guilty of abuse of process, this abuse of process did not arise from or is not connected with its business activities in the State of Mississippi from September 12, 1968 to the present. Therefore, in spite of the fact that Section 4345 of the Miss. Code states that a foreign corporation found doing business in the State of Mississippi "shall be subject to suit here to the same extent that corporations of this state are, *whether the cause of action accrued in this state or not*", the leading case of Mladinich v. Kohn apparently negates or nullifies the last phrase of this statute. However, even if *Mladinich* did not affect Sec. 5345, nevertheless this Court finds that the defendant Koehring has no agent for service of process in the State of Mississippi at this time, nor can effective service be had upon it by serving its former designated agent for service of process, the C. T. Corporation System, despite the provision of Sec. 5346 of the Miss.Code which provides that if a foreign corporation is found to be doing business in this State process may be served upon any agent found within the State of Mississippi, and in the absence of such an agent, on anyone who was its agent for process at the time of the commission of said act complained of, inasmuch as Section 5346 must be read together with Section 5309–234 of the Miss.Code which authorized the withdrawal of its designation of its agent for process through compliance of the provisions of said statute and the appointment of the Secretary of State of the State of Mississippi in its stead. None of Koehring's distributors had any authority to act for it or on its behalf and were not entrusted with his business. None were business representatives of Koehring's, and did not bring about, modify, effect, accept performance of or terminate contractual obligations between Koehring and third parties. See Black's Dictionary, 4th Ed., p. 85; First Jackson Securities Corp. v. B. F. Goodrich Co., Inc., 253 Miss. 519, 76 So.2d 272 (1965). See also 86 Am.Jur.2d, Foreign Corporations, sec. 573, p. 573, where the following is stated:

"A contract between a foreign corporation and its local dealer, which merely obligates the former to sell to the latter, and the latter to purchase from the former for resale on his own account, clearly is only a sales agreement, and does not give rise to any agency relation, and the service of process upon such a dealer is accordingly not valid as a service upon the corporation. Similarly, a person is not an agent within the meaning of statutes authorizing service of process upon foreign corporations, where the relation of the person served to the corporation is that of wholesaler and manufacturer, doing business under a contract by which the manufacturer agrees to sell his goods only to such wholesaler, who in turn agrees to buy them exclusively from the manufacturer."

Therefore, this Court finds that it is without in personam or territorial jurisdiction over the defendant Koehring in both of these cases under the provisions of Sections 1437, 5345 of the Miss.Code and their complementary process statutes, Sections 1866 and 5346.

The final basis on which plaintiffs in these two cases base their contentions that this Court has acquired personal or territorial jurisdiction over the defendant Koehring by service of process on the Secretary of State is that stated in their original declarations filed herein, namely, that while Koehring is not now qualified in Mississippi, it was so

qualified and had an appointed resident agent for service of process at the time that the causes of action which form the basis of these suits arose in the State of Mississippi, and that their rights to sue the defendant in Mississippi survived the withdrawal, based upon Section 5309–234, Miss.Code 1942, Rec.

■ The general rule as stated in 86 C.J.S. Torts § 25, p. 940 is as follows: " * * * Generally, the place of the wrong is determined where the last event necessary to make an actor liable for an alleged tort takes place, or, as otherwise stated, the place where the injury is suffered rather than the place where the act which caused the injury was committed."

This same rule is stated in the Restatement of Conflict of Laws, sec. 377, p. 454 as follows:

"The place of wrong is in the state where the last event necessary to make an actor liable for an alleged tort takes place."

In the note to the above sections, an illustrative situation was set out as follows:

"When a person sustains loss by fraud, the place of wrong is where the loss is sustained, not where fraudulent representations are made." (P. 457)

■ More specifically, in 72 C.J.S. Process § 124 is the following passage relative to abuse of process:

"Since it need not be shown that the suit in which the process was abused has terminated, as discussed supra § 120b(2) (e), the cause of action for an abuse of process is complete as soon as the acts complained of are committed."

In 1 Am.Jur.2d, Actions, Sec. 88, p. 617 we find the following:

"The word 'accrue' in connection with the accruing of a cause of action means becoming complete so that the aggrieved party can begin and prosecute his action * * * The true test is to ascertain the time when the plaintiff could first have maintained his action to a suc-

cessful result. The cause of action accrues when the person in whose favor it arises is first entitled to institute a judicial proceeding for the enforcement of his rights. In the case of a tort, the cause of action accrues when the wrongful act is committed * * * *"

In Forman v. Mississippi Publishers Corp., 195 Miss. 90, 14 So.2d 344, 346, the Mississippi Supreme Court stated:

"Citation from neither judicial decision nor lexicon is needed to support the view that a cause of action 'accrues' when it comes into existence as an enforceable claim, that is, when the right to sue becomes vested."

See the following in 1 A.L.R.3d 948, 953:

"Unlike an action for malicious prosecution where a legal termination of the prosecution complained of is essential, in an action for abuse of process it is not necessary, ordinarily, to establish that the action in which the process issued has terminated unsuccessfully. For this reason, a cause of action for abuse of process has been generally held to accrue, and the statute of limitations to commence to run, from the termination of the acts which constitute the abuse complained of, and not from the completion of the action which the process issued * * * *"

The questions before this Court in connection with the applicability of Section 5309–234 are: (1) whether this statute requires that the causes of action giving rise to this suit must have its origin or genesis within the State of Mississippi during the period that the defendant was licensed to do business in Mississippi, namely, between January 9, 1964 and September 12, 1968, or whether it suffices that it came into being during said time, regardless of where the alleged action accrued or where the injury was suffered; and (2) if the accrual within this State is required, whether the acts which constitute the abuse complained of accrued or had their effect, in whole or in part, upon the

plaintiffs within the State of Mississippi.

In order to resolve the first question, it is necessary to carefully read the applicable statute and to consider its history, which involves any amendments thereto, as well as its construction by the Courts of the State of Mississippi and Courts of other States construing similar statutes. The language of Section 5309–234 is identical with Paragraph 119(d) of the Model Business Corporation Act and reads, in part, as follows:

"A foreign corporation authorized to transact business in this state may withdraw from this state upon procuring from the Secretary of State a certificate of withdrawal. In order to procure such certificate of withdrawal, such foreign corporation shall deliver to the Secretary of State an application for withdrawal, which shall set forth:

'(d) That the corporation revokes the authority of its resident agent in this state to accept service of process and consents that service of process in any action, suit or proceeding based upon any cause of action arising in this state during the time the corporation was authorized to transact business in this state may thereafter be made on such corporation by service thereon on the Secretary of State.' "

The defendant contends that the wording of Paragraph (d) of this statute requires that the cause of action or the actions giving rise to this suit must have their genesis or origin or accrue within the State of Mississippi, whereas plaintiffs contend that this statute confers in personam or territorial jurisdiction in Mississippi Courts over foreign corporations for any act which accrued during the time that the corporation was qualified to do business in the State of Mississippi, regardless of the geographical area in which the action accrued or the acts giving rise to the action had their effect. The intent of the Mississippi legislature to broaden jurisdiction over foreign corporations after withdrawal is, in the opinion of this Court, clearly reflected by the enactment of Section 5309–234 in 1962, because the earlier statute, Section 5349, provided that a withdrawal should not affect any claim or suit or demand "arising out of the fact that the corporation * * * transacted business therein * * * " Thus, under the earlier statute which was superseded by the present one, the cause of action had to arise out of business transacted in the State of Mississippi, while the new statute merely requires that it arise in the State while the corporation was qualified to do business therein. This Court is impressed by plaintiffs' contention that the absence or omission from the requirement in the statute that the cause of action arise "out of" or "from", business or activities of the corporation in Mississippi is significant, and by their further argument that the cause of action in this State arose when plaintiff first had a right to institute an abuse of process action herein.

In Grenada Bank v. Petty, 174 Miss. 415, 164 So. 316, which involved a venue question which depended on the words "county where the cause of action may occur or accrue * * * " the Mississippi Supreme Court stated the following:

"The term 'cause of action' may refer to (1) a right to institute and carry on an action, or (2) the facts giving rise to an action. Cox v. American Freehold & L. Mortgage Co., 88 Miss. 88, 40 So. 739. Does the term here refer to one or both, and if one only, to which? It manifestly refers to the first, for it is followed by the word 'accrue,' the meaning of which, in the language of the law, is 'to come into existence as an enforceable claim; to vest as a right.' " (p. 318)

This Court is of the opinion that the key or vital words in the statute are "during the time", and that in order for the Courts of Mississippi to acquire ju-

risdiction over foreign corporations under the provisions of this statute, the cause of action merely had to arise or come into being within this State during the time that the corporation was authorized to do business herein, regardless of where it accrued; or in other words, that the "cause of action" in the present statute refers to a "right to institute and carry on an action" and that the word "arising" means "to come into existence as an enforceable claim." A New York statute which continued the agency of the Secretary of State after withdrawal in any action for "any liability or obligation incurred within this state" before the surrender of authority was interpreted by the New York Courts in an action brought for alleged conspiracy to defraud the plaintiff, which conspiracy occurred outside the State of New York but during the time that a defendant was authorized to do business therein, as follows:

"I interpret the statute to extend the jurisdiction of our courts to adjudicate controversies involving foreign corporations and citizens of this state, regardless of the situs of the transactions, providing they occurred during the period the corporation was licensed to do business in this state." Carlton Properties v. 328 Properties, 208 Misc. 776, 143 N.Y.S.2d 140, 142.

In Green v. Kensinger, 199 Kan. 220, 429 P.2d 95, the Court stated:

"Under K.S.A. 60–516 the statute of limitations of California is applicable *if the cause of action arose in that state.* In determining where a cause of action arises, this court in the early case of Bruner v. Martin, 76 Kan. 862, 93 P. 165, 14 L.R.A.,N.S., 775 held: 'The words "where the cause of action has arisen in another state," as used in the statute of limitation * * * mean the cause of action has accrued in a foreign state, or, in other words, when the plaintiff has the right to sue the defendant in the courts of such foreign state; and they have no reference to the origin of the trans-

action out of which the cause of action arose.' "

The Illinois Supreme Court in Strong v. Lewis, 204 Ill. 35, 68 N.E. 556 held:

"This question we have decided in the case of Hyman v. McVeigh, 87 Ill. 708, note, but not reported, where we said: 'The words, "when a cause of action has arisen" as they occur in the statute pleaded, should be construed as meaning when jurisdiction exists in the courts of a state to adjudicate between the parties upon the particular cause of action, if properly invoked, or, in other words, when the plaintiff has a right to sue the defendant in the courts of the state upon the particular cause of action, without regard to the place where the cause of action had its origin.' This case has also been followed in Wooley v. Yarnell, 142 Ill. 442, 32 N.E. 891."

This Court therefore is of the opinion that section 5309–234 Miss.Code was enacted to prevent a corporation from withdrawing from the State of Mississippi after a citizen of this State had a right to sue the corporation, and that jurisdiction conferred upon a foreign corporation through the provisions of this statute is predicated upon the fact that the cause of action accrue during the time that the corporation was qualified to do business within the State of Mississippi, regardless of the origin or genesis of the acts which gave rise to the cause of action, that is, whether or not they accrued or had their effect within or without the State of Mississippi.

Nevertheless, assuming that section 5309–234 requires as a prerequisite to the acquisition of jurisdiction over a foreign corporation, that the alleged abuse of process must have occurred or "accrued" within the geographical limits of the State of Mississippi, this Court is of the opinion and finds that at least some of the acts which it is alleged constitute an abuse of process, did accrue or did affect both plaintiffs within the geographical limits of the State of Mississippi. It must be remembered that

the defendant, Koehring, domesticated itself or qualified to do business within the State of Mississippi having appointed the C. T. Corporation System as its registered agent for service of process between the dates of January 9, 1964 and September 12, 1968, when it withdrew. The acts complained of and the approximate dates thereof determined from the pleadings and evidence herein, as stated earlier in this opinion, are as follows: (1) Koehring's applying for and procuring a temporary restraining order from the United States District Court for the Northern District of Oklahoma on March 11, 1964, restraining the Chancery Court of the First Judicial District of Hinds County, Mississippi and the plaintiff Hyde from proceeding with the trial or suit of Hyde v. Koehring therein, which restraining order of course would have and did have no effect until served upon or noticed within the State of Mississippi; (2) Koehring's request on March 12, 1964 that the United States District Court in Oklahoma require both of the plaintiffs herein, Hyde and its attorney, Dunn, to show cause why they should not be held in contempt of court for failure to comply with the above temporary restraining order, this show cause order being served upon Dunn and Hyde within the State of Mississippi; (3) Koehring's alleged participation in the procurement on March 14, 1964 of an Order for the Arrest of Mr. Dunn by the United States Marshal in Jackson, Mississippi and his release only after obtaining a habeas corpus writ from the United States District Court for the Southern District of Mississippi. See Stewart v. Dunn, 363 F.2d 591 (C.A.5, 1966). Although the defendant contends that the plaintiff Dunn was "detained for a few minutes", it is undisputed that he was arrested pursuant to an Order of Arrest issued by the United States District Court for the Northern District of Oklahoma and which amounted to a *criminal* contempt procedure as specifically found in the above case of Stewart v. Dunn, *supra;* and (4) Koehring's efforts in January 1968 to have Hyde fined for contempt of court in the United States District Court in Oklahoma. While the process used and abused was that of a Federal Court in Oklahoma, in each instance, the effective use of it on Hyde occurred in the State of Mississippi during the time that Koehring was authorized to transact business in Mississippi. None of these actions of the United States District Court in Oklahoma would have affected Hyde or Dunn unless and until they were served or legally notified within the State of Mississippi at which time and in which place their cause of action for abuse of process accrued.

In Lowry v. International Brotherhood, 220 F.2d 546 (C.A.5, 1955), the Fifth Circuit held:

"Where suspension of union member was initiated by president of union in Kansas, where letter of suspension was mailed, but letter was received by member in Mississippi, cause of action accrued in Mississippi * * *

"It was the receipt of the letter in Pascagoula, Mississippi, that caused the alleged injury * * * The final act which creates the liability in a cause of action has both aspects of time and place. It occurs at a certain time and in a certain geographical spot. The letter had no effect upon the appellant until received by him in Mississippi; it was there that he was a member of the union, and it was there that the suspension took effect. His cause of action accrued in Mississippi and should be governed by the laws of that state."

In the case of Boulevard Airport v. Consolidated Vultee Aircraft Corp., 85 F.Supp. 876 (D.C.Pa.) the Pennsylvania statute in question provided that upon withdrawal of a foreign corporation and the issuance of a Certificate of Withdrawal process could be served on the Secretary of the Commonwealth against the corporation *"in an action upon any liability or obligation incurred within this Commonwealth,* before the issuance * * *" (Emphasis supplied). Plain-

tiff was a distributor of the defendant aircraft company. The action was brought for fraud for misrepresentations by the manufacturer made to the distributor as to what he intended to do or not do in the future, for the purpose of inducing the distributor to act in reliance thereon and on which the distributor did act. The defendant Vultee, the manufacturer, was authorized to do business in Pennsylvania but had withdrawn. The misrepresentations were made at a meeting in Michigan during the time that the defendant was authorized to do business in Pennsylvania. Suit for the loss sustained by the distributor as a result of the alleged fraud and deceit of the manufacturer was brought in Pennsylvania and process served on the Secretary of the Commonwealth as the agent for the defendant. The Court in refusing to dismiss the suit on the ground that it was not brought for a liability incurred within Pennsylvania stated:

The tort of fraud and deceit for fraudulent misrepresentations is complete when the other person acts thereon to his detriment or incurs liability as a result of the misrepresentation. Restatement of Torts, sec. 889, comment c. Therefore, the defendant's liability arose when the plaintiff acted to his detriment upon the alleged fraudulent misrepresentations of the defendant * * *

"The plaintiff is a domestic corporation located in Philadelphia, Pennsylvania * * * the place of wrong is in the state where the last event necessary to make an actor liable for an alleged tort takes place. Restatement of Conflict of Laws, § 377. 'The law of the place of wrong determines whether a person has sustained a legal injury.' Restatement of Conflict of Laws, § 378. It follows that the defendant's liability arose within the Commonwealth of Pennsylvania and is governed by the laws of Pennsylvania."

This same Pennsylvania statute was involved in the case of Sunbury Wire Rope Mfg. Co. v. United States Steel, 18 F.R.D. 13 (C.A.3) rev. 230 F.2d 511. Sunbury, a Pennsylvania manufacturing corporation brought suit against nonresident corporations, including Roebling Securities Corporation, charging that defendants had participated in a conspiracy and restraint of trade which had destroyed plaintiff's Pennsylvania manufacturing business. Roebling, a New Jersey corporation had qualified in Pennsylvania during the time of the alleged conspiracy but had since withdrawn prior to suit. Suit was brought in Pennsylvania and service was had on the Secretary of the Commonwealth. The Court of Appeals adopted the holding of the District Court that a cause of action under the antitrust laws arises at the place where plaintiff suffered the damage, and held that suit was for a liability incurred within Pennsylvania before the withdrawal. The Court stated:

"One question raised here is whether the present suit seeks to enforce 'a liability incurred within Pennsylvania.' In analyzing the factual situation which the pleadings and supplemental papers reveal, the district court properly pointed out that in 'its complaint in the present case plaintiff claims as damages a total loss of the value of its business together with a loss of profits. These losses occurred in Sunbury, Pennsylvania, within Northumberland County. Hence the cause of action asserted herein arose in the Middle District of Pennsylvania which includes Northumberland County.' The gravamen of Sunbury's complaint is that conspiratorial acts of the several defendants have made its operation of a manufacturing enterprise in Pennsylvania unprofitable. Wherever particular wrongful acts of the conspirators may have occurred, the injurious impact on the plaintiff is said to have been through its business activities in Pennsylvania. Liability for injury thus suffered in Pennsylvania is 'liability incurred within Pennsylvania' within the meaning of Robeling's consent to remain

suable. Boulevard Airport v. Consolidated Vultee Aircraft Corp., D.C.E.D. Pa.1949, 85 F.Supp. 876 * * * "

■ Based upon the above, this Court finds and is of the opinion that it has territorial or in personam jurisdiction over the defendant Koehring in both of these cases under the provisions of Section 5309–234 of the Miss.Code, and therefore, the Motions to Dismiss filed by the defendant in both cases based on lack of territorial jurisdiction, or in the alternative to quash process, will be overruled.

The next question which must be decided is that raised by the Motions to Transfer filed by the defendant in both of these cases in which it seeks transfer of these causes of action to the United States District Court for the Northern District of Oklahoma.

The defendant's Motions in these two cases is predicated on the provisions of Section 1404(a), Title 28 U.S.C.A., which provides:

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

The criteria to be considered in a Motion for a Change in Venue has been set forth and examined in numerous cases, including the leading case of Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947). The factors enumerated in *Gilbert* and its progeny have been incorporated in an extensive annotation to the Fifth Circuit Court of Appeals opinion in Time, Inc. v. Manning, 366 F.2d 690 (C.A.5, 1966) found in an excellent recently published American Law Reports edition dealing exclusively with Federal questions. 1 A.L.R. Fed. 15–215. It thus becomes encumbent upon this Court to examine these criteria in light of the facts herein presented.

■ In the instant case, the plaintiffs chose to bring this action in the Southern District of Mississippi. Unless strongly outweighed by other factors, the plaintiffs' choice of forum should rarely be disturbed. Gulf Oil Corp. v. Gilbert, *supra*, at 839. The importance of this consideration is well expressed in the case of Time, Inc. v. Manning, *supra*, 366 F.2d at page 698, the Court stating:

"The plaintiff's statutory privilege of choosing his forum is a factor, held in varying degrees of esteem, to be weighed against other factors in determining the convenient forum. 1 Barron & Holtzoff, Federal Practice and Procedure (Wright Ed.) § 863. At the very least, the plaintiff's privilege of choosing venue places the burden on the defendant to demonstrate why the forum should be changed. 'Plaintiff's privilege to choose, or not to be ousted from, his chosen forum is highly esteemed.' Rodriguez v. Pan American Life Ins. Co., 5 Cir. 1962, 311 F.2d 429, 434."

■ Both plaintiffs, Hyde and Dunn, are domiciled and reside in the forum in which this suit was brought. This factor certainly deserves consideration in determining a motion for transfer and has been frequently emphasized by courts in denying such a motion.[11] While a trial in Mississippi would to some extent inconvenience defendant Koehring, the Court is of the opinion that a transfer to Oklahoma would merely shift the inconvenience to the plaintiffs. Furthermore, the plaintiff Hyde is, to say the least, in grave financial difficulty. The added economic burden occasioned by the transfer of this case to Oklahoma might well compel Hyde to abandon the litigation. The parties' relative financial ability to bear expenses of a trial in a particular forum is an important consideration in any motion for transfer.[12]

11. 1 Barron and Holtzoff, Federal Practice and Procedure (Wright Ed.) sec. 864; 1 A.L.R. Fed. 67, and cases cited therein.

12. 1 A.L.R. Fed. 71; 1 Barron and Holtzoff, Federal Practice and Procedure (Wright Ed.) sec. 864, and cases cited therein.

The unavailability of compulsory process to insure attendance of unwilling witnesses for trial in either Mississippi or Oklahoma is of course conceded by both sides. The inconvenience and costs incurred by the attendance of willing witnesses in either location is also an important consideration. These factors can perhaps more accurately be described as a desire to have a witness' live testimony at the trial, depositions being a poor substitute therefor. The Court has before it the affidavits of both Mr. Scott Tennyson, counsel for defendant Koehring, and Vardaman Dunn, plaintiff herein and one of counsel for plaintiff, Hyde, in which numerous witnesses are listed in addition to a brief résumé of the materiality of their testimony. It is the quality or materiality of a particular witness' testimony which is the important factor to be considered rather than the quantity of possible witnesses presented.

The defendant states that in order to properly defend in this cause the live testimony of Judge Allen E. Barrow, Senior United States District Judge for the Northern District of Oklahoma is essential. Judge Barrow, it is averred and the record so indicates, signed the major portion of the process, writs and other documents complained of in this suit; he presided over the major portion of all hearings held in Oklahoma including the civil action between Hyde and Koehring (Cause No. 5911), the criminal action against Dunn, (Cause No. 14,375) and the criminal action against Hyde Construction Company (Cause No. 14,-324); he cited Hyde and Dunn for contempt of court, and he signed the order of dismissal of the criminal actions against Hyde and Dunn, in light of the decision by the Tenth Circuit Court of Appeals. The defendant further lists as necessary witnesses: John Imel, the United States Attorney for the Northern District of Oklahoma from 1961 to February of 1967, who was in charge of, and actively participated in, all criminal proceedings against Hyde and Dunn; Larry McSoud, United States Attorney since February 1969 and prior to such time Assistant United States Attorney under Imel, who actively participated in all criminal proceedings prior to February 1969 and has been in charge of subsequent matters connected with the criminal prosecution of Dunn; Hubert A. Marlowe, Assistant U. S. Attorney who participated in the contempt proceeding and criminal prosecution of Dunn; Robert Santre, also an Assistant U. S. Attorney, who did considerable work in the appeal of Dunn to the Tenth Circuit Court of Appeals; and finally Villard Martin, Jr., defendant's leading trial counsel in Oklahoma in the civil case of Hyde v. Koehring Co., who actively participated in a number of hearings germane to the instant case.

On the other hand, plaintiffs list the following witnesses who will possibly be used, the live testimony of each being necessary for the presentation of both cases; R. W. Hyde, Jr., President of the plaintiff corporation, who is intimately familiar with the effects of the defendant's alleged torts upon his company; Vardaman S. Dunn, plaintiff herein and trial counsel for Hyde in the Chancery Court of Hinds County, Mississippi and the Mississippi Supreme Court, and also counsel for Hyde in the proceedings in the District Court in Oklahoma, the Tenth Circuit Court of Appeals and the U.S. Supreme Court, and who further represented plaintiff in the District Court in Wisconsin and before the Court of Appeals for the Seventh Circuit, thus being familiar with all the alleged acts and torts committed by the defendant; Judge Charles Clark, recently appointed to the United States Court of Appeals for the Fifth Circuit, who, as a partner in the firm of Cox, Dunn and Clark, represented plaintiffs before the U.S. District Court in Oklahoma, The Tenth Circuit Court of Appeals, the U.S. Supreme Court, the U.S. District Court in Wisconsin and the Court of Appeals for the Seventh Circuit, thus having first hand knowledge of many occurrences and conversations relating to the action; William H. Cox, Jr., a partner in the firm

of Cox, Dunn and Clark, who participated in the proceedings related to the habeas corpus petition to this Court for the release of plaintiff Dunn, Hyde's trial counsel, to enable him to continue with the trial in the Chancery Court; William E. Suddath, an attorney for plaintiffs herein who was employed to assist in the proceedings related to the habeas corpus petition filed in this Court; Roger Landrum, chief trial counsel for Koehring Co. in the Chancery Court action and a resident of Mississippi, who will verify pertinent allegations of the Complaint; Earl Thomas and Webb Overstreet, local attorneys in Jackson, Mississippi, who will testify in support of the element of damages to both plaintiffs. In addition, plaintiffs list the following public and court officials who reside in Jackson, Mississippi, and have knowledge of pertinent facts in this cause: Honorable J. C. Stennett, Chancellor, who presided at the trial of the above referred to Chancery Court action and is thus familiar with the alleged acts of the defendant; Jack Stuart, United States Marshal, who personally arrested plaintiff Dunn, Hyde's trial counsel, by order of the Oklahoma District Court and supervised service of other processes against plaintiffs: Charles Sutherland, Chief Deputy U.S. Marshal, who testified in the contempt hearing in Oklahoma and is familiar with facts surrounding the service of process in Mississippi; Robert Hauberg, U.S. Attorney for the Southern District of Mississippi, who handled the opposition to the heretofore mentioned petition for writ of habeas corpus filed in this Court; and finally Fred Thomas, Sheriff of Hinds County, Mississippi and his office personnel, who are familiar with the attempts of plaintiff Hyde to collect its judgment, and the alleged acts of interference with such efforts by the defendant. Plaintiffs further list as possible witnesses the following persons residing in neither Mississippi nor Oklahoma: Attorneys for the Justice Department in

Washington, D.C. handling the appeal in the habeas corpus and contempt of court proceedings; the personnel and house counsel of Koehring Company residing in Milwaukee, Wisconsin; and members of a law firm in New Orleans who were involved in proceedings against the plaintiffs herein.

This Court is convinced, upon a careful study of the affidavits and briefs in support thereof, that the testimony of most of the witnesses listed by both parties would be material and their live testimony would certainly be preferable over depositions. The inconvenience of defendant's witnesses coming to Mississippi for trial would be no greater than the inconvenience of plaintiffs' witnesses going to Oklahoma for trial. While Judge Barrow, the U.S. Attorneys in Oklahoma and defendant's counsel could be classified as "key" witnesses for the defendant, Judge Clark, Chancellor Stennett, local attorneys associated with or having knowledge of the prior proceeding, and the various public and court officials residing in Jackson, deserve the same classification as witnesses for the plaintiffs. Nor should the interest of the parties Hyde and Dunn, particularly when their testimony is vital to the case, be ignored, but is an important consideration as heretofore mentioned.

■ Likewise, the availability of evidence and the expense of procuring its production is a factor to be considered.[13] The defendant has submitted the affidavit of the Clerk of the U.S. District Court in the Northern District of Oklahoma, stating there is a large bulk of documentary evidence having relevance to this case on file in Tulsa or at a depository closer to Tulsa than Jackson. The papers and files of defendant's witnesses are also in Oklahoma. On the other hand, the affidavits of Dunn supporting plaintiffs' position reveal that the voluminous books and records of plaintiff Hyde, the records of the Chancery Court in Hinds County, the records

---

13. Gulf Oil Corp. v. Gilbert, supra; 1 A.L. R. Fed. 59, and cases cited therein; 1

Barron and Holtzoff, Federal Practice and Procedure (Wright Ed.) sec. 386.5.

of the Mississippi Supreme Court and the records of this Court, all having relevance to this action, are located in Mississippi. This Court does not consider that the relative ease of access to sources of proof factor is balanced in favor of the transfer of this case to Oklahoma.

 The conflict of laws principles of the state where the action is brought are determinative of which state substantive law is to be applied. Mullinax Engineering Co. v. Platte Valley Const. Co., 412 F.2d 553 (C.A. 10, 1969); Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Uncertainty in the forum state's conflict of laws rules weighs against transfer.[14] Mississippi has recently adopted the "center of gravity" doctrine for determining which state's substantive law should apply in a conflicts situation. Mitchell v. Craft, Miss., 211 So.2d 509 (1968). It is not necessary or proper for this Court to determine at this time whether this action should be governed by Mississippi or Oklahoma law. A careful reading of the *Mitchell* case, however, reveals that the outcome under the now applicable Mississippi conflicts of laws principles is at least uncertain. This Court, being familiar with the previous Mississippi conflict decisions which were modified by *Mitchell* is better able to make a determination of which law should be applied. Moreover, if it should be determined that Oklahoma law is applicable, there would seem to be little difficulty in this Court interpreting and applying Oklahoma substantive law under the facts and circumstances of these cases.

 The relative congestion in the respective Court dockets has also been considered on a Motion for Transfer.[15] The defendant, by affidavit of the respective Court Clerks and records attached thereto, presents for consideration the fact during the three month period commencing Jan. 1, 1969, at which time 375 Civil cases were pending in the Southern District of Mississippi and 201 in the Northern District of Oklahoma, 133 cases were commenced and 125 terminated in this District as compared with the commencement of 49 cases in the Oklahoma District and termination of 70. However, in examining the Director of the Administrative Office of the United States Court's Annual Report, the Court notes that during the fiscal year ending June 30, 1969, this District terminated 541 cases, of the 447 pending on July 1, 1968 and the 511 cases commenced thereafter; whereas, the Northern District of Oklahoma terminated 256 cases during the fiscal year of the 201 pending on July 1, 1968, and the 259 having been commenced thereafter.[16] Thus, the rapidity of case disposal in this District compares very favorably to that of the Oklahoma District Court, and this Court does not foresee any delay in adjudicating this cause due to a congested docket condition in this forum. The Fifth Circuit Court of Appeals considered the docket conditions of the respective Districts in its 1963 decision which transferred the original *Hyde v. Koehring* litigation to Oklahoma.[17] Since that time, however, this District has gained two additional U.S. District Judges, as a result of which the congestion, then existing, has been greatly reduced.

 A final consideration on a Motion for Transfer is the place where the events upon which an action is founded occurred. The defendant contends that this is an action for misuse or abuse of process issued by the U.S. District Court in Oklahoma and that none of the conduct complained of occurred in the forum state. The plaintiffs respond that the

---

14. 1 Barron and Holtzoff, Federal Practice and Procedure (Wright Ed.) sec. 866; 1 A.L.R. Fed. 95, and cases cited therein.

15. 1 A.L.R. Fed. 80; 1 Barron and Holtzoff, Federal Practice and Procedure (Wright Ed.) sec. 866, and cases cited therein.

16. Administrative Office of the U. S. Courts, Annual Report of the Director, 1969, Table C—1.

17. Koehring Company, et al. v. Hyde Construction Co., 324 F.2d 295 (C.A.5, 1963).

alleged misuse and abuse of the process so issued occurred in Mississippi, was designed to operate and did operate in Mississippi, and the injuries and damages occurred in Mississippi. The Court has already fully discussed various aspects of this issue in considering and deciding the jurisdictional question under Section 5309–234 of the Miss.Code. In order not to be repetitious, suffice it to say that this Court is of the opinion that at least some of the acts which it is alleged constitute an abuse of process, did accrue or affect both plaintiffs within the geographical limits of the State of Mississippi.

Based upon the above, this Court finds and is of the opinion that the Motions of the defendant filed under 28 U.S.C. sec. 1404(a) to Transfer these cases to the United States District Court for the Northern District of Oklahoma should be and will be overruled.

The plaintiffs shall present their Orders to this Court in conformance with the foregoing opinion within the time and in the manner prescribed by the Rules.