**William Roy MILLER, Plaintiff,**

v.

**NATIONAL BROADCASTING COMPANY, Inc., Defendant.**

**Civ. A. No. 1767.**

United States District Court
D. Delaware.

July 6, 1956.

Louis J. Finger (of Richards, Layton & Finger), Wilmington, Del., for plaintiff.

C. Waggaman Berl, Jr. (of Berl, Potter & Anderson), Wilmington, Del., and Carleton G. Eldridge, Jr. (of Coudert Brothers), New York City, for defendant.

WRIGHT, District Judge.

Plaintiff, Miller, pleaded guilty to robbery of the Arizona Bank and Trust Company of Tucson, Arizona, and on April 25, 1951, was sentenced to imprisonment for a term of fifteen years. He is presently serving his sentence in the United States Penitentiary at Leavenworth, Kansas.

Defendant, National Broadcasting Company, Inc.,[1] a Delaware corporation, with principal offices in New York City, operates a network of television broadcasting stations known as the "NBC Television Network". On February 18, 1955, a television broadcast over defendant's network sponsored by American Tobacco Company and known as the "Big Story" featured a dramatic reenactment of the bank robbery without the

---

1. Incorrectly sued as National Broadcasting Company.

knowledge or consent of plaintiff. As a result of this television broadcast, plaintiff, proceeding in forma pauperis, on May 9, 1955, commenced a damage action in the District Court for the Southern District of New York [2] against the sponsor, American Tobacco Company, and, on November 28, 1955, instituted this action against the television network defendant in the District of Delaware.

Defendant, National Broadcasting Company, Inc., has brought before the court a motion to transfer pursuant to 28 U.S.C. § 1404(a).[3] In support of its motion, defendant has introduced an affidavit by Thomas E. Ervin, vice president and general attorney of National Broadcasting Company, Inc. In this affidavit, it is conceded there was aired from New York City "live" (not on film except for background shots) a dramatic reenactment of the bank robbery for which defendant has been sentenced. After asserting that the American Tobacco Company is a New Jersey corporation with offices located in New York City, the affidavit goes on to declare that,

"all persons and entities charged with or having anything to do with this program, other than plaintiff, are located here in New York City or its vicinity except insofar as it may become necessary and desirable to bring witnesses from Tucson, Arizona, the location of the bank robbery and from Racine, Wisconsin, the current residence of the newspaper reporter whose 'big story' was reenacted on the program complain-

ed of. It is further stated that the records, files and documentary evidence necessary to the prosecution or defense of both actions are far more accessible to all parties in New York City than in Delaware. Both litigations can be conducted in New York at less expense and inconvenience to all concerned than in the State of Delaware." [4]

The affidavit further states that if the motion for transfer is granted, defendant will cause its New York counsel to make an application to consolidate both actions for trial in view of the fact that the action against American Tobacco Company and defendant involve common questions of law and fact.[5]

Plaintiff, opposing the motion to transfer, has by affidavit indicated that he was denied a request for appointment of counsel in his action against the American Tobacco Company by the New York District Court [6] and he is without means with which to obtain counsel in New York,[7] and consequently, if the case were transferred to New York, plaintiff would be unable to prosecute his action properly.[8] Inability to properly prosecute is buttressed by the affidavit of attorney for plaintiff [9] wherein it is stated plaintiff's action against the American Tobacco Company was marked off the trial calendar in New York at an assignment conference.[10] Presumably plaintiff's action was marked off the trial calendar because there was no one present to represent plaintiff.

The question which must be answered is whether defendant's motion for trans-

2. Civil Action File No. 100–273.

3. 28 U.S.C. 1404(a) provides as follows:
   "(a) For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

4. Affidavit of defendant, by Thomas E. Ervin, paragraph 6.

5. Id., paragraph 7.

6. Affidavit of plaintiff, paragraph 3.

7. Id., paragraph 4.

8. Id., paragraph 5.

9. While the record does not so indicate, plaintiff procured counsel in Delaware because of the conscientiousness of Judge Rodney, who, when he received plaintiff's request for appointment of counsel by the court, referred the matter to the Lawyer's Reference Service which in turn directed the matter to Louis J. Finger, who is presently plaintiff's Delaware counsel.

10. Affidavit of Louis J. Finger, attorney for plaintiff.

fer to the southern district of New York should be granted upon the foregoing facts as shown by the record.

█ The controlling statutory section, 28 U.S.C. § 1404(a), establishes three criteria which must be considered in weighing a request for transfer: (1) the convenience of the parties, (2) the convenience of the witnesses, and (3) the interest of justice. While plaintiff's choice of forum is not articulated as a determinative criteria, it must be kept in mind that "if § 1404(a)'s factors are evenly balanced, perceptibly inclining neither toward one forum nor the other, the action remains in the forum of plaintiff's choice." [11]

█ In the absence of any circumstance foreign to convenience of parties and witnesses calling into play separate consideration of the factor of interest of justice, transfer to the district of defendant's choice will be granted if such action will eliminate a considerable portion of defendant's inconvenience without increasing the burden of plaintiff. [12]

While the record is somewhat necessarily vague and speculative as to the precise witnesses to be called and as to the quantity of books and records which will be needed to settle this litigation, it seems relatively certain that New York would be more convenient to defendant and will not be more inconvenient to plaintiff than Wilmington. This balance could not help but favor transfer to New York if it were not necessary to consider the circumstances apart from convenience of parties and witnesses which have a direct bearing on the interest of justice.

Defendant urges transfer in the interest of justice, not only because of convenience of parties and witnesses, but because transfer will enable it to move for consolidation with American Tobacco Company and thus eliminate two trials. Plaintiff, on the other hand, urges a denial of transfer in the interest of justice since such transfer will result in an insurmountable handicap occasioned by the absence of counsel to prosecute this action in New York.

Insofar as the record is concerned with respect to counsel, this then is the situation: In Delaware, plaintiff has counsel; in New York, plaintiff has no counsel, has no funds with which to procure counsel and has been denied appointment of counsel by the district court of New York in a case involving practically identical questions of law and fact. [13]

█ As it is too speculative at this stage of the proceedings to give any credence to the belief advocated by plaintiff that the ultimate issue will be one of law and not of fact, thus rendering inconvenience to parties and witnesses inconsequential, [14] it is similarly too fortuitous on the present record to predict the attainment of counsel by this impecunious, incarcerated plaintiff if the action were transferred to New York. Therefore, it must be assumed plaintiff will be deprived of counsel and thus unable to prosecute his actions if this matter were transferred to New York.

11. Paragon-Revolute Corp. v. C. F. Pease Co., D.C.Del.1954, 120 F.Supp. 488, 490; see: Miracle Stretch Underwear Corp. v. Alba Hosiery Mill, Inc., D.C.Del.1955, 136 F.Supp. 508.

12. Miracle Stretch Underwear Corp. v. Alba Hosiery Mill, Inc., D.C.Del.1955, 136 F.Supp. 508; General Felt Products Co. v. Allen Industries, Inc., D.C.Del. 1954, 120 F.Supp. 491; Paragon-Revolute Corp. v. C. F. Pease Co., D.C.Del.1954, 120 F.Supp. 488.

13. There is serious doubt in the mind of this court that the New York District Court could have done other than deny appointment of counsel for the plaintiff. Therefore, the action of the New York District Court in the companion case necessarily is an element to be considered in determining the propriety of granting or denying transfer and the weight which should be given to "the interest of justice" factor under 28 U.S.C. § 1404(a) in the light of the peculiar circumstances of this case.

14. Cf. Revere Camera Co. v. Masters Mail Order Co., D.C.Md.1954, 127 F.Supp. 129.

Language employed by Judge Rodney is peculiarly applicable and controlling in this situation:

"Manifestly the most important criterion in determining the advisability of transfer is the 'interest of justice.' * * * no court would ever find transfer to a forum which is financially out of reach of an impecunious plaintiff to be in the 'interest of justice.' " [15]

Motion denied.

An order in accordance herewith may be submitted.

---

15. Cinema Amusements, Inc., v. Loew's Inc., D.C.Del.1949, 85 F.Supp. 319, 326, 327.