**A. C. SAMFORD, INC., Plaintiff,**

v.

**The UNITED STATES of America and Blythe, Thompson & Street Co., Defendants.**

Civ. A. No. 772.

United States District Court
M. D. Georgia,
Albany Division.

Dec. 13, 1963.

Smith, Swift, Currie, McGhee & Hancock, Atlanta, Ga., for plaintiff.

Floyd M. Buford, U. S. Atty., for defendant, United States.

McCleneghan, Miller & Creasy, Charlotte, N. C., and Farkas, Landau & Dav-

is, Albany, Ga., for defendant, Blythe, Thompson & Street Co.

ELLIOTT, District Judge.

The Plaintiff in this case, A. C. Samford, Inc., is a Georgia corporation with its principal place of business in the Albany Division, Middle District of Georgia, qualified to do business in South Carolina. The corporate defendant, Blythe, Thompson & Street Co., is a joint venture company composed of Blythe Brothers Company, Inc., F. N. Thompson, Inc., and McDevitt & Street Company. Each of these three corporations who constitute the joint venture company are North Carolina corporations having their principal places of business in Charlotte, North Carolina. Each of them have qualified to do business in the State of South Carolina and in the State of Georgia and have agents authorized to receive process in those states.

This is an action for damages based on a claim of tort under the laws of the State of South Carolina, the United States of America being joined under the provisions of the Tort Claims Act. The complaint alleges generally that the Plaintiff entered into a contract with the United States of America to construct a 200-unit Capehart Housing Project at the United States Naval Ammunition Depot, Charleston, South Carolina, the United States acting through the Bureau of Yards and Docks, Department of the Navy. The corporate Defendants also had a contract with the Government to construct certain other facilities nearby and the Plaintiff alleges that the Government was negligent in failing to provide an access road to the project being constructed by the Plaintiff under the terms of the construction contract which the Plaintiff had with the Government and also under the terms of the contract which the corporate Defendants had with the Government, the theory of the complaint being that the corporate Defendants and the Government were negligent in the circumstances, causing damage to the Plaintiff in the amount of $300,000.00. All of the operative facts having a bearing on the controversy took place at or near the sites of construction in or near Charleston, South Carolina.

The complaint was filed in the Albany Division of this Court on June 28, 1963 and was served on F. N. Thompson, Inc., on July 3, 1963, on Blythe Brothers Company, Inc., on July 3, 1963 and on McDevitt & Street Company on July 9, 1963. The summons attached to each copy of the complaint which was served upon each of the corporate Defendants provided that answers to the complaint were due "within sixty days after service of this summons". The copies of the complaint were promptly forwarded by the agents of the corporate Defendants upon whom service had been perfected to Mr. F. A. McCleneghan, Charlotte, North Carolina, the attorney for each of the companies involved in the joint venture, he observing upon receipt of the papers that answer was required within sixty days after service. The corporate Defendants relied upon Mr. McCleneghan to file such answers and take such other steps as might be deemed appropriate in their defense and Mr. McCleneghan relied on the provisions contained in the summons. Realizing that the United States of America was also a party Defendant, Mr. McCleneghan communicated with the United States Attorney in this District with regard to conferring with him in the preparation of the answers and was advised that there would be some delay in the filing of the Government's answer because of the necessity of obtaining a report on the facts from the Department of Justice. It was understood between them that they would hold a conference after the report had been received, looking toward the preparation of answers. In the meantime Mr. McCleneghan communicated with persons in the legal section at the Navy Yard in Charleston, South Carolina, to determine that the necessary report was being prepared for the Department of Justice, this communication being had on July 23, and then on July 24 Mr. McCleneghan associated local counsel in Al-

bany, Georgia to collaborate in the handling of the defense of the matter. The United States Attorney who was handling the matter for the Government was required to be absent from his office in connection with some temporary military duty for a period of about two weeks, and on the day of his return to his office Mr. McCleneghan was again in touch with him concerning the filing of answers, this communication having occurred on August 26, 1963. At that time the United States Attorney advised Mr. McCleneghan that he had just received the report from the Department of Justice and that he intended to ask counsel for the Plaintiff to consent to an extension of time in which the Government might file its answer. · Upon being advised of this Mr. McCleneghan suggested to the United States Attorney that he also obtain an extension for the corporate Defendants as well, so that there would be time to have a conference in connection with the filing of the answers before either Defendant filed. When the United States Attorney communicated with Plaintiff's counsel he learned that the Plaintiff's counsel intended to take the position that the corporate Defendants were in default and he relayed this information to Mr. McCleneghan, who thereupon got in touch with counsel for the Plaintiff by telephone, calling his attention to the fact that the summons attached to the complaint called for answers within sixty days. On the next day, August 27, 1963 Plaintiff's counsel filed a request to enter default. Without waiting for further conference with the United States Attorney, counsel for the corporate Defendants then proceeded without further delay to file their answer, this being filed on August 29, 1963, the United States in the meantime having been granted an extension of time within which to file its answer.

When the proceedings in this Court had reached that stage, Blythe, Thompson & Street Co. filed two motions, the first being a motion that the Plaintiff's request for entry of default be denied and that Blythe, Thompson & Street Co. be allowed to appear and answer, and the second being a motion for a change of venue from the Middle District of Georgia to the Eastern District of South Carolina on certain grounds stated in the motion. The other Defendant, the United States of America, has not filed a formal motion for change of venue to the Eastern District of South Carolina, but the United States Attorney who appears on behalf of the Government has by letter directed to this Court which constitutes part of the file in this case stated that, "The Government is in full accord with the motion now pending before the Court for a change of the venue of this case to the United States District Court for the Eastern District of South Carolina, Charleston Division." Counsel for Plaintiff and counsel for the corporate Defendants have filed affidavits and briefs in support of their respective positions with regard to each of the two pending motions, and the Court being fully advised in the circumstances, makes the following rulings with respect thereto.

## THE MOTION TO DISALLOW THE REQUEST FOR ENTRY OF DEFAULT AND FOR LEAVE TO APPEAR AND ANSWER

The pertinent Rules of Civil Procedure which apply in a consideration of this motion are:

Rule 4(b), which requires that the summons shall state " * * * the time within which these rules require the defendant to appear and defend, and shall notify him that in case of his failure to do so judgment by default will be rendered against him for the relief demanded in the complaint."

Rule 12(a), which provides that "A defendant shall serve his answer within 20 days after the service of the summons and complaint upon him * * *."

Rule 55(c), which provides that "For good cause shown the court may set aside an entry of default

and, if a judgment by default has been entered, may likewise set it aside in accordance with Rule 60 (b)."

Rule 60(b), which provides that "On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; * * * or (6) any other reason justifying relief from the operation of the judgment."

■ The first question which suggests itself in these circumstances is whether the summons which was issued and served upon these corporate Defendants was valid. It was not issued in the manner required by the provisions of Rule 4(b) because it recites a date for filing an answer other than that prescribed by Rule 12(a). There have been cases in which the courts have held that when a summons is made returnable at a time more distant from the date of service than the time prescribed by the statute, the summons confers no jurisdiction. In other instances the courts have held that this is merely an irregular summons and is subject to amendment. There is authority that a writ returnable at a time not authorized by law is void, and therefore, not amendable, but this question seems to have been rendered academic at this point in this case because the *corporate Defendants* have actually responded to the summons and have filed their answer, and this would seem to have cured any defect which might be claimed in the process.

The next question which should be considered is whether the Defendants were actually in default when they filed their answer on August 29, 1963. The process directed that an answer be filed within *sixty days of date of service*. The answer was filed before the expiration of that time. True, the process should have allowed twenty days, but it clearly specified a longer period. In a case re-

cently decided the Court of Appeals of Georgia said:

"Where process directs the Defendant to appear at a term of court subsequent to the term at which the case is properly returnable, he is entitled to rely upon the contents of the process and is protected by his obedience to it." Progressive Finance Co., Inc. v. Longleaf Lumber Co., Inc., Court of Appeals of Georgia, 1963, Ga.App., 134 S.E.2d 63.

We are tempted to adopt the language of the Court of Appeals of Georgia in this case, but we prefer to approach the matter on a broader base and consider whether the particular circumstances of this case justify the application of the relief provisions of Rules 55(c) and 60 (b), assuming *arguendo* that there was a default.

The Cyclopedia of Federal Procedure, 3rd Edition, Vol. 9, page 140, interprets subdivision (1) of Rule 60(b) as follows:

"The very phrasing of the Rule stating the grounds for opening a judgment in terms of 'mistake, inadvertence, surprise or excusable neglect' well indicates the wide range of the court's discretion. Excusable neglect may consist in a mistaken belief that the complaint had been answered or a pleading filed, or even a mistake as to required procedure or time to plead * * *. The tendency is to open a default and permit pleading and a trial on the merits if any kind of a reasonable excuse is offered and it appears that there is a possible defense on the merits."

In Moore's Federal Practice, Vol. 6, § 55.10(1), in discussing the principles which should apply in considering a motion to set aside a default, it is stated:

"At times the grounds put forward by the moving party, if proved or admitted, will entitle the defaulting party to relief as a matter of law. More often the grant or denial of the

motion will involve the exercise of a sound discretion; and the trial court's exercise of discretion will be interfered with by the appellate court only where there is an abuse. But where there are no intevening equities any doubt should, as a general proposition, be resolved in favor of the movant to the end of securing a trial upon the merits."

The above quoted excerpt from Moore's Federal Practice was quoted with approval by the United States Court of Appeals for the Fifth Circuit in General Telephone Corporation v. General Telephone Answering Service, et al., 277 F.2d 919 (1960), the Court commenting that:

"[T]he setting aside of the default has done no harm to plaintiff except to require it to prove its case."

The United States Court of Appeals for the Third Circuit has applied the provisions of Rule 60(b) in the case of Tozer, et al. v. Charles A. Krause Milling Co., 189 F.2d 242 (1951), as follows:

"The recent cases applying Rule 60 (b) have uniformly held that it must be given a liberal construction. Matters involving large sums should not be determined by default judgments if it can reasonably be avoided. * * * Any doubt should be resolved in favor of the petition to set aside the judgment so that cases may be decided on their merits. * * * Since the interests of justice are best served by a trial on the merits, only after a careful study of all relevant considerations should courts refuse to open default judgments."

The United States Court of Appeals for the District of Columbia in Barber v. Turberville, 94 U.S.App.D.C. 335, 218 F.2d 34 (1954), in directing that a judgment of default be set aside had this to say:

"In our opinion Rules 55(c) and 60 (b) should be given a liberal construction. * * * [f]or the plaintiff's part, no intervening equities are alleged which would cause hard-ship in the event the default were vacated * * *. That the defendant personally was not negligent in the protection of her interests seems clear from the facts recited. In situations such as are here disclosed, the courts have been reluctant to attribute to the parties the errors of their legal representatives."

The language used by the United States Court of Appeals for the Ninth Circuit in Security Trust & Savings Bank of San Diego, et al. v. Walsh, et al., 91 F.2d 481 (1937), is suggestive of the facts which we have before us in this case:

"A mistake of the attorney as to the applicable rule limiting the time for answering is not such neglect as would warrant action depriving the litigants of the right to be heard."

While there are differences in the facts, as there must always be in different cases, we think that the decisions of the appellate Courts above referred to point the direction in which the rule should be applied in this case. The corporate Defendants were diligent in referring the case involved to their attorney; they expected him to file an answer and take such other steps as might be necessary in their defense and had every reason to rely upon him to do so; there have been no intervening rights involved and the position of the Plaintiff will not be changed upon the trial of the case by virtue of a delay in the filing of the answer; the Plaintiff has not suffered any damage and will suffer no damage, if the Plaintiff has a good cause of action, by trying the case upon its merits; a meritorious defense is alleged by the answer which has been tendered by the corporate Defendants and the tendency in the federal courts in recent years has clearly been to permit pleading and trial on the merits "if any kind of a reasonable excuse is offered"; *if* counsel for the corporate Defendants was in fact negligent in relying upon the clear mandate of the summons it was excusable negligence.

■ All the circumstances considered, we conclude that the corporate Defendants in this case are entitled to a trial on the merits and should not be penalized on account of the failure of counsel to disregard the language of the summons. Were we to conclude otherwise we feel that we would be applying a rule of strictness rather than one of liberality which would not serve the ends of justice. Accordingly, the motion of the corporate Defendants to disallow the Plaintiff's request for entry of default is sustained and said corporate Defendants are granted leave to appear and answer and their answer heretofore tendered on August 29, 1963 is allowed filed as of that date.

## THE MOTION FOR CHANGE OF VENUE

■■ This motion is made under the provisions of § 1404(a) of Title 28 of the United States Code, which provides as follows:

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

Prior to the enactment of this law in 1948 there was no provision for transferring a case from one venue to another. If the forum elected by the Plaintiff was too inconvenient the remedy was to dismiss the case under the doctrine of *forum non conveniens*. Because this was a harsh disposition this remedy was exercised sparingly. Since the passage of § 1404(a) of Title 28, however, the procedure to change venue is more flexible. The same general considerations are material, but since the court can adopt the milder remedy of transfer rather than the harsher one of dismissal, the court's discretion is much broader and the transfers under § 1404(a) are more readily granted by the courts than were dismissals under the doctrine of *forum non conveniens*, and upon a lesser showing of inconvenience. This important distinction and the resulting improvement in our practice were pointed out in Norwood v. Kirkpatrick, 349 U.S. 29, 75 S.Ct. 544, 99 L.Ed. 789 (1955). This is not to say that the burden of showing that the case falls within the ambit of § 1404(a) is not on the movant. He still has the burden but it is a substantially lesser burden than was required by *forum non conveniens*. The proof which the movant is required to offer in support of his motion need not be overwhelming, it being necessary only that he show a balance of interests favoring the transfer. Brown v. Woodring, 174 F.Supp. 640 (U.S.D.C.Pa.1959). Neither is it to be said that the relevant factors which are to be considered in passing upon the motion have changed or that the Plaintiff's choice of forum is not to be considered, but only that the discretion to be exercised by the Court is broader. Grubs v. Consolidated Freightways, Inc., 189 F. Supp. 404 (U.S.D.C.Montana, 1960). Since the passage of the new statute, however, the Plaintiff's choice of forum has become relatively unimportant. While it is still clear that the Plaintiff has the right to choose his own forum, there can be no doubt that § 1404(a) is a substantial modification of this right and this is particularly so where the transaction which is the basis of the litigation occurred entirely outside the jurisdiction of the forum selected by the Plaintiff. In fact, it has been indicated by the courts in a number of instances that henceforth the Plaintiff's choice of forum should be entitled to little weight. All States Freight, Inc. v. Modarelli, 196 F.2d 1010 (1952, 3rd Cir.); Brown v. Woodring, 174 F.Supp. 640 (U.S.D.C. Pa., 1959); Glickenhaus, et al. v. Lytton Financial Corporation, 205 F.Supp. 102 (U.S.D.C.Del.1962); Popkin v. Eastern Air Lines, Inc., 204 F.Supp. 426 (U.S. D.C.Pa., 1962).

It has been said that:

"Where * * * none of the operative facts occur within the forum of original selection, the plaintiff's choice is entitled to only minimal consideration." Morgan v. Illinois

Central Railroad Company, 161 F. Supp. 119 (U.S.D.C., Texas, 1958).

▋▋ The determination of a motion of this kind is committed to the discretion of the Court, but it is a discretion that must be exercised within the framework of definitely established principles. The ultimate question to be determined is whether the granting of the motion will serve the convenience of the parties and the interests of justice, and the statute imposes upon the Court the consideration of three factors:

(1) Whether the action could originally have been brought in the transferee jurisdiction.

(2) The convenience of the parties and the witnesses.

(3) The public interest.

Let us consider these three factors as related to the circumstances of this case. As to the first test, whether the action could originally have been brought in the Eastern District of South Carolina, there can be no doubt that it could have been. The transaction complained of took place there, each of the corporate Defendants was qualified to do business in South Carolina and each of them had an agent authorized to accept service and process in that jurisdiction, and the United States of America was, of course, subject to suit there.

As to the second test, we think it is clear that the "convenience of the witnesses" insofar as the majority of the witnesses are concerned, would clearly dictate that the trial of this case should be in South Carolina in the district where the Naval Base is located. We realize that in the affidavits filed by the Plaintiff in opposition to the motion for a change of venue reference is made to the fact that some of the Plaintiff's witnesses live in Georgia, Florida and Alabama. It also appears that some of the Defendant's witnesses live in North Carolina. So, regardless of where the trial is held, it will be necessary for some witnesses to be inconvenienced, but we are convinced that the overall inconvenience to all witnesses would be lessened if

the trial were had in South Carolina. It certainly can be presumed that it would be far less inconvenient to the Government's witnesses and less expensive from the Government's standpoint if the trial were held in the district where the Naval Base is located because all of the Government's personnel and all of the Government's records which would be involved in the case would be more readily available in Charleston.

▋ Insofar as the second test relates to the "convenience of the parties", the home office of the Plaintiff is in Georgia, the home office of each of the Defendant corporations is in North Carolina, and neither the Plaintiff corporation nor the Defendant corporations maintain a regular place of business in Charleston, South Carolina. If the case is tried in South Carolina the incidental expenses incurred by each of the parties other than the expense of obtaining the presence of witnesses, would probably be about equal. It is doubtless true that the trial would be less expensive to the Plaintiff if the case were tried in Albany, Georgia, the location of the home office of the Plaintiff, and the Plaintiff has asserted by way of affidavit that it is in poor financial condition and that it is imperative that it economize and can ill afford any expense of litigation which can be avoided. This contention by the Plaintiff is not controverted by the Defendant and we are aware that it is a feature of the situation which should be considered in the ultimate ruling on this motion.

The third test under the statute is whether the change of venue would be "in the interest of justice". The phrase connotes conditions which are in the furtherance of the administration of justice. Here not only the interest of the parties is to be considered, but the interest of society in general is to be taken into consideration. So there is involved the relative ease of access to sources of proof, the availability of compulsory process to require the attendance of unwilling witnesses, the cost of obtaining the attendance of witnesses, the possi-

.bility of a view of the premises which may be involved in the litigation, the question of whether the citizens in a district which has no relation to the litigation should be required to bear the burden of jury service, the state of the court calendar and the likelihood of early trial both in the district where the case is pending and in the district to which it is sought to have the case transferred, and whether the transferor or transferee court would be more competent in applying the substantive law which would govern the rights and liabilities of the parties.

With regard to "sources of proof" it has already been noted that this entire transaction took place at the United States Naval Ammunition Depot in Charleston, South Carolina. The land and access roads referred to in the suit are located there. All of the contracts, records, maps and other related papers which doubtless will be the subject of construction and examination in this case are located there. So it appears that it would be easier to obtain access to these sources of proof upon the trial of this case if the trial were held in South Carolina.

With regard to the availability of compulsory process to require the attendance of witnesses, the evidence submitted on behalf of the Plaintiff shows that the Plaintiff expects to use nine witnesses who would be outside of the subpoena jurisdiction of the court in South Carolina, but it is noted that of these nine witnesses four of them would also be outside of the subpoena jurisdiction of the court in Georgia, and further, that five of the nine witnesses referred to are still employed by the Plaintiff and, presumably, because of that fact would willingly attend the trial of the case wherever held. On the other hand, the evidence submitted on behalf of the movant indicates that the movant expects to use approximately thirty-five witnesses upon the trial of the case, approximately twenty-five of whom reside in the Charleston, South Carolina area, and that none of its witnesses would be subject to subpoena if the case were tried in Albany, Georgia.

A reading of the complaint indicates that the nature of the topography and the natural conditions existing in the area where this contract was performed, including the condition of the soil, the weather, drainage, etc., will be material factors to be considered and it could easily be that, although the nature of the area has been changed by virtue of the completed construction, the jury and the Court might be aided in arriving at a verdict in the case by viewing the premises and the surrounding terrain, as well as considering photographs of the area before the construction was completed. Such a view of the premises would be possible if the case were tried in the Eastern District of South Carolina and would be impossible if tried in the Middle District of Georgia.

The Plaintiff suggests that the Government would undoubtedly require all of its personnel who are to be witnesses in this case to come to Albany, Georgia if the trial were held there and this is undoubtedly true just as it is likewise true that the corporate Defendants would probably arrange to have many of their Charleston witnesses travel to Albany to testify even though they could not be required to make the trip, but we think it is clear that the burden and expense to all of the Defendants in trying the case in the Albany Division of this court would be decidedly greater and more burdensome than if the case were tried in the Charleston Division of the South Carolina court.

The controversy involved is of interest primarily in the Charleston, South Carolina area and has no connection whatever with the Albany, Georgia area. There is no local interest in the Albany Division of this court in having local jurors try and settle the issues as there would be in Charleston, South Carolina, and normally in such a situation the citizens of the Charleston Division of the South Carolina court should constitute the jury.

The evidence submitted with regard to the state of the court calendar and the likelihood of an early trial in the respective courts indicates that a trial could be expected in one court about as soon as in the other. The Clerk of the United States District Court for the Eastern District of South Carolina states that the next term of the court in the Charleston Division will be in January, 1964, but that any case that is filed in the Charleston Division within the near future would probably not be reached for trial until the next succeeding term, which would be in May, 1964. In the Albany Division of this court, the Division in which this suit is now pending, there will not be another term of court until April, 1964, so the earliest time at which this case could be tried in this court is only one month sooner than it is anticipated that it would be tried in the Eastern District of South Carolina and we do not consider this differential in time to be great enough to be of significance.

It is alleged in the complaint that this "is a complaint based solely upon the law of tort of South Carolina". This means that it will be necessary upon the trial of this action for the Court to interpret the applicable statutes and court decisions of the State of South Carolina and clearly South Carolina law and South Carolina decisions governing the rights and liabilities of the parties are matters concerning which the United States Judge in the Eastern District of South Carolina would have a greater competence than would this Court.

■ Upon a review of the foregoing it becomes apparent that the only reason for retaining this case for trial in this court is that it would be less expensive to and more convenient for the Plaintiff. All of the other considerations above mentioned dictate that the case should be transferred to South Carolina. Gulf Oil Corporation v. Gilbert, 330 U. S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947); Southern Railway Company v. Madden, 235 F.2d 198 (1956, 4 Cir.); Chicago, Rock Island and Pacific Railroad Company v. Iqoe, 220 F.2d 299 (1955, 7 Cir.); Koehring Company, et al. v. Hyde Construction Company, Inc., 5th Cir., 1963, 324 F.2d 295.

Defendant's motion for change of venue is sustained and the case is transferred to the United States District Court for the Eastern District of South Carolina, Charleston Division, pursuant to the provisions of § 1404(a) of Title 28, United States Code.

It is so ordered.