David VAUGHN, Jr., Plaintiff,

v.

AMERICAN BASKETBALL ASSOCIA-
TION and New Virginia
Squires, Defendants,

and

New York Nets et al., Additional
Defendants.

No. 76 Civ. 1141.

United States District Court,
S. D. New York.

Sept. 28, 1976.

Jerry A. Davis, New York City, for plaintiff.

Schwartz, Halperin & Schreiber, P. C., New York City, for defendant New Virginia Squires; Allen G. Schwartz, New York City, of counsel.

Michael H. Goldberg, New York City, for all remaining defendants.

## MEMORANDUM

LASKER, District Judge.

David Vaughn, Jr., a professional basketball player sues his former employer, the New Virginia Squires Basketball Club, and the American Basketball Association (ABA) and other member clubs of the ABA, for breach of an employment contract and for injury to reputation. Damages are claimed for amounts due prior to the Squires' termination of the contract, as well as amounts claimed under the contract subsequent to the termination, and for additional damages resulting from injury to Vaughn's reputation as a basketball player. Jurisdiction arises under 28 U.S.C. § 1332, and venue in

this district appears proper under 28 U.S.C. § 1391.[1]

The defendant Virginia Squires, joined by the ABA (of which it is a member) has moved for a transfer of this case to the Eastern District of Virginia under 28 U.S.C. § 1404(a).

On August 12, 1974, plaintiff signed a six-year, $1.2 million contract with the Virginia Squires. The contract specifies that the "governing law" shall be that of Virginia. Pursuant to negotiations by his agent in New York plaintiff also received a letter from the Commission of the ABA purporting to bind the ABA and its member clubs to an "unconditional guarantee" of the Squires' contractual obligations upon notice of default.[2]

In July, 1975 plaintiff was arrested in the Eastern District of Virginia and charged with indecent behavior. The following day he was arrested for failing to pay for some gasoline, after a police chase in which Vaughn's car injured an occupant of a third automobile. At the end of this chase plaintiff was wounded by police gunfire. These incidents were reported with considerable zeal in the Virginia newspapers.[3] Criminal proceedings ensued which culminated in plaintiff's conviction on what have been described by Virginia's Attorney General's Office as "technical" automobile offenses including damage to city property, reckless driving, disregard of a red light, and assault.[4]

---

1. Plaintiff alleges in his complaint that all of the named defendants do business "within the State of New York." Title 28 U.S.C. § 1391 provides that in a diversity case, venue is proper "in the judicial district where . . . all defendants reside . . . ." Although corporations, according to the statute, are considered to "reside" in any judicial district in which they "do business," it is not clear from the complaint that all of the defendants do business in the *Southern District* of New York. Defendant Virginia Squires in its answer pleads as an affirmative defense that venue does not lie in the Southern District of New York, but has adduced no factual allegations or explanations in support of this assertion. We assume, therefore, for present purposes that venue is proper in the Southern District of New York. *Cf.* 28 U.S.C. § 1406(b).

2. In its answer the ABA denies the validity of the guarantee as having been beyond the powers of the Commissioner; asserts that it does not bind other member clubs; and argues finally that assuming its validity, the guarantee does not bind ABA until Virginia Squires' liability is established.

3. Copies of these articles were attached as exhibits to the defendants' affidavit in support of their motion to transfer.

4. The only felony charge arising out of these incidents was eventually *nolle prossed.* A letter from the Commonwealth's Attorney's Office of Virginia, attached as an exhibit, states that the offenses of which Vaughn was convicted are "technical" misdemeanors "not requir[ing] proof of criminal intent."

Although plaintiff was admitted to training camp in September, 1975,[5] Virginia Squires' general partner, by letter dated February 16, 1976,[6] notified Vaughn that his contract was terminated due to his violation of ¶ 3(d), which provides that the player shall:

"(d) Always be fully and neatly attired in public and at all times (on and off the basketball court) conduct himself in accordance with the highest standards of morality, honesty, fair play and sportsmanship and will not do anything which shall be detrimental or prejudicial to the CLUB, the ASSOCIATION or of professional sports or which shall subject any thereof to ridicule or contempt."

The major issue to be decided, therefore, is whether plaintiff's behavior in July, 1975, amounted to a breach of the above paragraph sufficient to justify the club in terminating his employment. Bearing this in mind, we turn to the criteria we must apply in ruling on a discretionary motion for transfer under § 1404(a).

■ This section permits the presumption in favor of plaintiff's choice of forum to be overcome, even though venue is proper in the initial district, where the convenience of the witnesses and parties and the interests of justice suggest that another forum would be more appropriate for resolution of the case, as long as the transferee forum is one in which original venue would also have been proper. 28 U.S.C. § 1404(a). This cause could originally have been brought in Virginia.[7] A consideration of the further statutory criteria indicate that Virginia would indeed be a more appropriate forum for the trial of this action, and that the balance of convenience markedly outweighs plaintiff's initial choice.

■ The convenience of the witnesses tips the scale decisively towards Virginia as a more appropriate forum. Working from the opposing affidavits on this motion, the situation of the potential witnesses is as follows: Three eyewitnesses to events at the gasoline station, to be called by the defendants, reside in Virginia and are not subject to subpoena in New York. The victim of the automobile accident is similarly a Virginia resident, as are the three police officers involved in the chase and arrest. Plaintiff's argument that their testimony is irrelevant since the factual incidents "merged" in the convictions is unpersuasive; the language of ¶ 3(d) of the contract—which governs the dispute—seems to set a standard of behavior and attire for the player unrelated either to actual convictions or criminal liability, and we have been cited to no Virginia case construing similar contractual provisions differently.[8] Thus, the testimony of these witnesses seems "key" on the issue of whether plaintiff's behavior was "in accordance with the highest standards of morality, honesty . . ." or was "detrimental or prejudicial to the Club . . . ." There is no allegation that any of these witnesses would even be willing to come to New York for trial. Although it is the nature of the witness' testimony rather than their numbers which is important, *Kel-*

---

**5.** Plaintiff alleges that the Squires refused to "utilize [his] services" in any basketball games in the 1975–76 season, thereby injuring his reputation.

**6.** This letter was written after plaintiff was convicted on the above described charges in the first tier of Virginia's two-tier criminal court system. (The trial court forwarded the felony count to the grand jury.) On retrial in May, 1976, plaintiff was convicted of the offenses described above.

**7.** In a diversity case, an action may be brought in the judicial district in which the cause of action arose.

**8.** Plaintiff relies on *Twentieth Century-Fox Film Corp. v. Lardner,* 216 F.2d 844 (9th Cir. 1954), *cert. denied,* 348 U.S. 944, 75 S.Ct. 365, 99 L.Ed. 739 (1955), in support of his argument that the conviction here involved would not constitute evidence of a breach of the "morals" clause contained in the contract. In that case, however, the contractual "morals clause" had specifically prohibited the defendant from engaging in any state or federal crime, and the court of appeals found that a conviction of criminal contempt for refusal to answer questions pertaining to national loyalty and Communist party membership was a violation of the morals clause justifying termination of the contract.

ler-Dorian Colorfilm Corp. v. Eastman Ko-
dak, Co., 88 F.Supp. 863, 866 (S.D.N.Y.
1949); Goodman v. Southern Ry. Co., 99
F.Supp. 852, 854 (S.D.N.Y. 1951); Schneider
v. Sears, 265 F.Supp. 257, 263 (S.D.N.Y.
1967), the testimony of at least some of
these seven witnesses in person seems es-
sential to a determination of the issue
presented.[9]

In addition to these seven eyewitnesses,
defendant indicates that the Attorney Gen-
eral of Virginia and the psychiatrist who
examined Vaughn just after the July inci-
dents may be called as witnesses. Plain-
tiff's counsel claims in his affidavit (with-
out indicating the basis for his belief) that
the psychiatrist would come to New York,
as would three of the four named team-
mates or coaches of plaintiff whom defend-
ant wishes to call. At least two of the
three willing to come to New York reside in
Virginia at this time. Even those witnesses
willing to come to New York for trial can
be more accessible in the event of unfore-
seen delays or postponements if the trial is
had in Virginia, and will be inconvenienced
less.

A fair summary shows that of witnesses
whose testimony seems relevant and desira-
ble, only one of plaintiff's proposed witness-
es resides in New York, whereas at least
ten of defendant's witnesses live in Virginia
and none of them are in New York. Espe-
cially in light of the Virginia location of
certain key eyewitnesses, the balance of
convenience of the witnesses (as well as the
costs of obtaining their testimony and the
availability of compulsory process) favors
Virginia as a forum. Cf. A. C. Samford,
Inc. v. United States, 226 F.Supp. 72
(M.D.Ga. 1963).

Plaintiff argues nonetheless that an eval-
uation of the "convenience of the parties"

would favor the Southern District of New
York as a forum.

Plaintiff is a citizen of Tennessee,
and now resides in Virginia himself. His
New York attorney in this action is also his
professional agent, and is therefore acting
without separate fee here; however, he will
receive a share in commissions from any
damage award made under the contract.
The attorney's affidavit, unsupported by
any affidavit from plaintiff himself, sug-
gests that the transfer would create a fi-
nancial hardship for plaintiff. While the
relative financial hardship on the litigants
and their respective abilities to prosecute or
defend an action in a particular forum are
legitimate factors to consider, Hyde Con-
struction Co. v. Koehring Co., 321 F.Supp.
1193, 1212 (S.D.Miss. 1969); Grubs v. Con-
sol. Freightways, Inc., 189 F.Supp. 404, 410
(D.Mont. 1960); Keller-Dorian Colorfilm
Corp. v. Eastman Kodak, Co., supra, 88
F.Supp. at 866, mere inconvenience to coun-
sel is not. Cressman v. United Air Lines,
158 F.Supp. 404, 407 (S.D.N.Y. 1958); Grey
v. Continental Marketing Associates, Inc.,
315 F.Supp. 826, 832 (N.D.Ga. 1970). The
supporting affidavit does not even state
that the New York attorney will not contin-
ue his representation in the event of a
transfer to Virginia. In this case, there-
fore, the claim of financial hardship to the
plaintiff arising out of the transfer is enti-
tled to little weight. The allegations are
neither specific, supported by affidavit
from the plaintiff, nor do they in their
present form suggest any inability or likely
inability to prosecute the action. Indeed,
the damages claimed by plaintiff, which are
in excess of $1 million, suggest the con-
trary. Comp. A. C. Samford Inc. v. United
States, supra, 226 F.2d 72 with Miller v.
National Broadcasting Co., 143 F.Supp. 78
(D.Del. 1956).[10] Moreover, of the three wit-

---

9. Plaintiff also argues that the testimony of
some of these witnesses is available from the
criminal trials in which he was convicted.
Those trials presented a completely different
issue from that here involved, and therefore
such prior recorded testimony would be of lim-
ited value even if it were admissible. Cf. Fed-
eral Rules of Evidence 804(b)(1).

10. By way of contrast, in Miller v. NBC, supra,
plaintiff brought his defamation action in the
District of Delaware. Defendants sought re-
moval to New York, where the alleged wrong-
ful acts had occurred and where the witnesses
were located. Although the convenience of the
parties and the witnesses favored New York as
a forum, the district court denied the motion to
transfer. Plaintiff's papers had shown that he

nesses whom plaintiff plans to call, only one is available in New York, whereas the other two reside in Georgia and Arizona respectively. None of defendants' witnesses reside in New York. Thus, the convenience and expense of preparation for trial would seem to be only marginally more expensive for plaintiff in Virginia (if at all, in view of plaintiff's residence in Virginia) and somewhat less expensive for the defendant. See *Miller v. National Broadcasting Co., supra,* 143 F.2d at 81.

Even if plaintiff were correct that the only real party-in-interest is the ABA,[11] whose principal office is in New York, at best the convenience of the parties would be a stand-off as between New York and Virginia, due to the location of the witnesses. We are not inclined to agree with plaintiff in any event, since ABA is liable, if at all, only in the event that the Virginia Squires are in fact shown to be in default on their contractual obligation to the plaintiff.

Finally, in considering the "interests of justice," appropriate weight should be given to the desirability of having a Virginia federal judge interpret a contract made in Virginia and by its own terms to be interpreted in accordance with Virginia law. *Van Dusen v. Barrack,* 376 U.S. 612, 644–46, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964). Where one key issue [12] is whether the player has observed high moral standards or has disgraced a local Virginia team, a sensitivity not only to Virginia law but to Virginia mores and customs might be a particularly valuable asset to the trial judge and to the jury which must follow his charge. In addition, the key incidents in this case (other than the negotiation of the ABA guarantee) all occurred in Virginia, and a jury drawn of Virginia citizens would seem to have a greater connection with the subject matter of this dispute than would a New York jury. *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508–09, 67 S.Ct. 839, 91 L.Ed. 1055 (1947). While standing alone this set of factors might not be decisive, taken togeth-

---

was impecunious and had free counsel in Wilmington, who would not be able to represent him in New York. Plaintiff was imprisoned in Kansas, and had previously sought to have counsel appointed in a related action in New York City. His request had been denied. In *Hyde Construction, supra,* 321 F.Supp. at 1212, the court concluded on the basis of affidavits that the "added economic burden" of transferring the suit "might well compel Hyde to abandon the litigation." And in *Grubs, supra,* 189 F.Supp. at 407, 411, not only was the evidence before the court sufficient to show the extreme financial hardship which would be imposed on plaintiffs in a wrongful death action by a transfer, but in addition, physical injuries resulting from the accident giving rise to the action would have made a trip to a different forum close to impossible for one plaintiff. Finally, in *Keller-Dorian, supra,* 88 F.Supp. at 866, the plaintiff's evidence of its " 'negligible current asset position,' against a large outstanding indebtedness" was specific enough to persuade Judge Ryan that a transfer might make the anti-trust action "prohibitive" for the plaintiff.

11. Plaintiff asks the court to take judicial notice of the fact that the Virginia Squires have lost their franchise, are almost defunct, and that any recovery must be had from ABA. Although we might be able to take judicial notice of the franchise loss, the financial condition of the Squires would still need to be established at trial. In any event, the Squires' finan-

cial condition is not relevant to the first factual issue to be decided, that is, whether the Squires' breached any contractual obligation to plaintiff. Although plaintiff's complaint alleges that the Squires notified ABA of "default," and argues that this triggers the "primary" liability of ABA under the contract, the ABA's answer denies any notice of default. And we have been cited to no Virginia or New York law supporting plaintiff's view that on the basis of the ABA letter of guarantee alone, the ABA is the only real party in interest to this litigation.

12. We recognize that the question of whether Vaughn breached the morals clause is not the sole issue presented by the pleadings. Were that issue not present in the case, we might well be inclined to deny the motion to transfer. Whether the plaintiff is owed $155,000. from the period prior to termination would depend on the testimony of relatively few witnesses; questions pertaining to the validity and meaning of the ABA guarantee could perhaps be resolved as easily in New York as in Virginia from the view point of convenience. Cf. *Erving v. Virginia Squires Basketball Club,* 349 F.Supp. 709 (E.D.N.Y. 1972). The central issue in the case—and the basis for plaintiff's most substantial claim for damages—however, is whether the termination was valid. This in turn rests (at least in part) on whether plaintiff's behavior violated the morals clause.

er with the convenience of the witnesses, they clearly suggest that this case is most appropriately tried in Virginia.

Accordingly, the motion to transfer this action to the Eastern District of Virginia is granted, and the Clerk of this court shall transfer the file of the case forthwith to the Clerk of the Eastern District of Virginia.

It is so ordered.