Edward GOODMAN, Plaintiff,

v.

Carl N. SCHMALZ, Robert E. Giese, William Sanderson, Oscar R. Rice, Jr., Kenneth Bennett, Beatrice M. Guggenheim and Mary A. Noonan, Defendants.

No. 77 C 1704.

United States District Court,
E. D. New York.

Nov. 2, 1978.

Eagle & Fein, New York City, for plaintiff by Leon Fein, New York City.

Donovan, Leisure, Newton & Irvine, New York City, for defendants by Sanford M. Litvack, Doris K. Shaw, New York City.

MEMORANDUM AND ORDER

NEAHER, District Judge.

Plaintiff initiated this action charging defendants with violations of Section 10(b) of the Securities Exchange Act of 1934, 15

U.S.C. § 78j(b), common law fraud, breach of contract, and *ultra vires* corporate acts. He premises jurisdiction under 28 U.S.C. § 1332(a) and seeks compensatory damages of $79,300 and a like amount in exemplary damages. He also seeks an order declaring four contracts void and unenforceable.

The action is before the court on defendants' motion pursuant to Rule 12(b)(6), F.R. Civ.P., for an order dismissing the complaint for failure to state a claim upon which relief may be granted, or in the alternative, for an order transferring this action to the United States District Court for Massachusetts.

### Background

This action arises out of the sale by defendants on December 15, 1975, of all their stock in R. H. Stearns & Company, Inc. ("Stearns"), a Massachusetts corporation operating retail department stores. Plaintiff, defendants and Stearns entered into four agreements on that date which resulted in plaintiff becoming the sole shareholder of Stearns.

The first of these agreements, entered into by plaintiff, Stearns and defendants Sanderson, Giese and Schmalz, resulted in the redemption by Stearns of these defendants' stock ("Redemption Agreement # 1"). Plaintiff signed this agreement on behalf of Stearns as its Chairman and in an individual capacity. The second agreement, similar to the first, resulted in the redemption by Stearns of the stock of defendants Guggenheim, Noonan and Bennett ("Redemption Agreement # 2"). Plaintiff executed this agreement solely in his capacity as Chairman of Stearns. The third agreement was between plaintiff and defendant Rice, whereby plaintiff purchased Rice's stock for $79,300. The fourth and final agreement was a personal guaranty, signed by plaintiff and defendants Schmalz and Giese, in which plaintiff undertook to guarantee payment when due of Stearns' obligations arising out of Redemption Agreement # 1 to the extent of $200,000.

In July 1976, Stearns informed defendants that there were certain discrepancies in the statements of merchandise inventory provided plaintiff in the original transaction and accounts payable in Schedule 3 of Redemption Agreement # 1. To these accusations of misrepresentation in the Agreement, defendants Schmalz and Giese responded by commencing an arbitration proceeding in accordance with the terms of Redemption Agreement # 1. In March 1977, Stearns filed a petition under Chapter XI of the Bankruptcy Act, which stayed the arbitration proceeding and which is still pending. This action followed, based upon allegations of misrepresentation in Redemption Agreement # 1.

### The Motion to Dismiss

In his complaint, plaintiff alleges that the four agreements were executed in furtherance of the parties' intent and plan that plaintiff acquire all the outstanding shares of Stearns stock (Complaint ¶¶ 7–9). He further alleges that the agreements were conceived and entered into as interdependent instruments and constituted a single contractual arrangement (Compl. ¶ 10). Despite these allegations, defendants move to dismiss on the ground that the agreements were in fact separate and independent, and thus the representations made in Redemption Agreement # 1, if any, are not the basis for any claim plaintiff can assert. This is so, defendants contend, because the representations in that agreement were made to Stearns alone, and thus plaintiff lacks standing to assert a corporate claim for his own benefit. Defendants further suggest that, even if the court finds that plaintiff has standing to sue on the representations made in Agreement # 1, the court should dismiss at least as to defendants Guggenheim, Noonan, Bennett and Rice, who were not signatories of that agreement. Defendants also urge dismissal of the § 10(b) claim on the ground that plaintiff was not a defrauded purchaser as required under the federal securities laws.

The cornerstone of defendants' position is that the four agreements are separate and independent. Although the basis for this argument is not readily apparent in view of

the integrated character of the transaction and plaintiff's individual participation in Redemption Agreement # 1, we need not at this time express an opinion on the merits of this issue. We believe that defendants' contentions are not susceptible to treatment on a motion before answer and unsupported by affidavit.[1]

The Court of Appeals for this circuit has recently stated that

"separate written agreements executed at the same time *may be considered in law as one agreement, but only if the parties so intended.* Whether the parties intended that the two agreements should be interdependent is a question of fact which turns upon the circumstances of each case." (Emphasis supplied.)

*Lowell v. Twin Disc, Inc.*, 527 F.2d 767, 769–70 (2 Cir. 1975).

The court went on to state the test to be employed in the words of Williston:

"It can be nothing else than the answer to an inquiry whether the parties assented to all the promises as a single whole, so that there would have been no bargain whatever, if any promise or set of promises were struck out." *Id.* at 770.

See also *Chuy v. Philadelphia Eagles Football Club*, 431 F.Supp. 254, 259 (E.D.Pa. 1977).

These quotations suggest the futility of defendants' position: plaintiff's standing to sue, assuming defendants' characterization of this issue is correct, turns on the construction of the agreements. The resolution of this question, in turn, depends on the intent of the parties, which is hotly disputed.[2] The agreements, standing alone, do not cast a dispositive light on the question of their interrelatedness despite the various arguments pro and con.[3] Consequently, and simply put, the court is unable to decide on this motion, as a matter of law, that the agreements are independent and that plaintiff lacks standing to assert his claims.[4]

■ Defendants further contend that plaintiff lacks standing to pursue his federal securities law claims on the theory that he was not a defrauded purchaser within

---

1. Although unnecessary to our decision, the affidavits provided by plaintiff underline the factual issues to be resolved and suggest the difficulty in deciding a motion of this nature without affidavits based on personal knowledge of the underlying events. We do not suggest by this that defendants are not capable of providing such support. Nor do we suggest that moving affidavits would have permitted the court to grant a motion for summary judgment in favor of either side. Rules 12(b) and 56, F.R.Civ.P.

2. Defendants initially mounted a strictly legal attack, but in response to plaintiff's arguments in opposition to their motion have now brought into issue his characterization of the parties' intent (Defendants' Reply Memorandum at 1–4).

3. Defendants contend, *inter alia*, that plaintiff gave no consideration and acquired no personal rights under Redemption Agreement # 1, although they admit that he did make some representations of a limited nature. They also assert that merger clauses in each agreement demonstrate independence and not interrelation (Defendants' Memorandum at 12–13). Plaintiff responds with a series of provisions in the agreements which he contends demonstrate that plaintiff did have obligations under Redemption Agreement # 1 and was the purchaser of the Stearns stock under all the agreements. He also notes that his guarantee of Stearns' obligations under Agreement # 1 unequivocally shows that he was more than a bystander to the whole transaction (Plaintiff's Memorandum at 11–14).

4. Nor does defendants' citation to *Rudman v. Cowles Communication, Inc.*, 30 N.Y.2d 1, 330 N.Y.S.2d 33, 280 N.E.2d 867 (1972), lend much support to their contentions. On appeal from a decision of a special referee, plaintiff argued that two agreements constituted a single transaction. The New York Court of Appeals stated that whether the parties intended that the agreements be dependent or separate was a question of fact, tested by the parties' intent viewed in the surrounding circumstances. The court noted that form was not conclusive, although separate agreements were some evidence that promises made in one were not conditional on performance of the other and affirmed the trial court's conclusion that the agreements were separate, "recognizing that the agreements involved formally different parties, and [were] actually executed in [sic] different dates." *Id.* at 42, 280 N.E.2d at 873–74.

It is simply impossible, as suggested by this analysis, to reach a similar conclusion here on the basis of an unanswered complaint.

the meaning of *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 731, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1972). See also *Birnbaum v. Newport Steel Corp.*, 193 F.2d 461, 464 (2 Cir.), *cert. denied*, 343 U.S. 956, 72 S.Ct. 1051, 96 L.Ed. 1356 (1952). Defendants ask this court to conclude that plaintiff was not a purchaser in Redemption Agreement # 1, the only agreement in which misrepresentations are alleged, and thus may not assert a 10(b) claim.[5] For the reasons stated above, we decline this invitation. Furthermore, defendants' position is substantially without merit. To satisfy the "defrauded purchaser" rule, it is not required that defendants be the sellers of the stock or that plaintiff have purchased the stock from the defendants. *Baretge v. Barnett*, 553 F.2d 290, 291 (2 Cir. 1977). See also *Shapiro v. Merrill Lynch*, 495 F.2d 228, 239 (2 Cir. 1974). While it is not now possible to determine whether plaintiff should be deemed the purchaser of the shares transferred to the corporation, it is uncontested that plaintiff did purchase the Rice shares, ultimately the only outstanding Stearns stock.

■ Here, as in *Baretge v. Barnett, supra*, the complaint alleges an original purchase of stock based on defendants' alleged misrepresentations (Compl. ¶ 15). The complaint also alleges that defendants fraudulently induced plaintiff to enter into the agreements (Compl. ¶¶ 14 & 15). Finally, it states that plaintiff relied on defendants' representations to his detriment (Compl. ¶¶ 15 & 24). These allegations are certainly sufficient to satisfy *Blue Chip, supra*, and thus the complaint cannot be dismissed on this ground either.[6]

### Motion to Transfer

Since dismissal is not appropriate we turn to defendants' alternative motion to transfer this action pursuant to 28 U.S.C. § 1404(a) to the United States District Court for the District of Massachusetts, which has been deferred until now because success of defendants' arguments to dismiss the complaint as to various defendants might have materially affected the disposition of the transfer motion. See *Walsh v. Pullman Co.*, 10 F.R.D. 77 (S.D.N.Y.1948).

Jurisdiction in this action is grounded on diversity of citizenship. Plaintiff is a resident of New York. Five of the defendants reside in Massachusetts, one in Vermont and one in New Hampshire. Plaintiff apparently concedes that this action "might have been brought" in the District of Massachusetts, *Van Dusen v. Barrack*, 376 U.S. 612, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964), since the alleged representations, the negotiations, execution and closing of the agreements all took place in Massachusetts. Thus our inquiry is limited to whether the convenience of the parties and witnesses and the interests of justice would be best served by a transfer.

■ Section 1404(a) modifies the doctrine of *forum non conveniens* and requires a lesser showing of inconvenience than is required under that doctrine. *Norwood v. Kirkpatrick*, 349 U.S. 29, 32, 75 S.Ct. 544, 99 L.Ed. 789 (1955); 1A Moore, Federal Practice, ¶ 0.204 at 2205–06 (2d ed. 1977). The criteria weighed by a court in deciding a motion under § 1404(a) are: (1) convenience of the parties; (2) convenience of material witnesses; (3) availability of process to compel the presence of unwilling witnesses;

---

5. Defendants also suggest that since plaintiff was presumably able to serve the defendants extraterritorially only because of the nationwide service provisions of the Securities Exchange Act, 15 U.S.C. § 78aa, the remainder of the complaint should be dismissed because of defective service and lack of personal jurisdiction.

6. In view of our disposition, we need not address defendants' final argument that plaintiff is usurping a corporate claim properly belong-

ing to Stearns' trustee in bankruptcy and is thereby frustrating the bankruptcy laws.

We need only note that plaintiff's personal liability to certain defendants, on the guaranty, for the obligations arising out of Redemption Agreement # 1 is the heart of the complaint. If he were in fact fraudulently induced to enter into the guaranty on the basis of defendants' misrepresentations, it can hardly be asserted that he is impermissibly attempting to avoid personal liability and bypass the bankruptcy laws.

(4) the cost of obtaining the presence of witnesses; (5) the relative ease of access to sources of proof; (6) calendar congestion; (7) where the events in issue took place; and (8) the interests of justice in general. See, *e. g., Car Freshner Corp. v. Auto Aid Mfg. Corp.*, 438 F.Supp. 82, 85 (N.D.N.Y. 1977); *Scheinbart v. Certain-Teed Products Corp.*, 367 F.Supp. 707 (S.D.N.Y.1973). The burden is on the movant to make a "clear showing" that litigation in the proposed transferee district would be more convenient and would better serve the interests of justice. *Schneider v. Sears*, 265 F.Supp. 257, 263 (S.D.N.Y.1967). The defendants here have made such a showing.

■ Although their affidavits do not specifically outline the material nature of their testimony, see *Car-Freshner Corp., supra* at 85, each defendant does state that he or she expects to be called as a witness at trial and that this would be an undue burden for one reason or another. Defendants suggest that their advanced ages and, in certain cases, illnesses and infirmities as well as various business obligations would make it a particular hardship to travel to New York. They contend that their concentration in the Massachusetts area in light of their particular circumstances is persuasive evidence that transfer to Massachusetts would on balance promote the parties' convenience. See *Schreiber v. Northwestern Mutual Life Insurance Co.*, 361 F.Supp. 625, 626 (S.D.N.Y.1973). Plaintiff does not contest any of these factual allegations. Nor does he suggest that all the defendants won't be called on to testify, although he does contend that only defendants Schmalz, Giese and Sanderson are material witnesses.

Plaintiff merely asserts in a conclusory fashion that it will be inconvenient for him to try the case in Massachusetts. In so stating, in fact, plaintiff refers solely to his *witnesses* and has made no affirmative showing of inconvenience to himself.

The convenience of the non-party witnesses is in equipoise. Defendants contend they will call numerous non-party witnesses, most of whom reside in the Massachusetts area (Thayer Affidavit ¶¶ 8–10, 18).[7] They also suggest that these witnesses are not under defendants' control and are not amenable to process in this district. They further assert that deposition testimony is wholly unsatisfactory in a fraud case where credibility is crucial. See, *e. g., Saminsky v. Occidental Petroleum Corp.*, 373 F.Supp. 257, 260 (S.D.N.Y.1974).

Plaintiff responds by contending that his witnesses, Judge Lesser and Mr. Aronin—his former lawyer and accountant respectively—are New Yorkers and most material to his case (Goodman Affidavit at 15). Given these respective claims, it is apparent that with respect to witnesses' convenience, there might well be a slight shifting of burdens; either side will be inconvenienced to a certain extent by a trial away from home. In this position, the convenience to witnesses is not a dispositive factor, and plaintiff should not be prejudiced greatly should he rely in fact upon some deposition testimony. See *Y⁴ Design, Ltd. v. Regensteiner Pub. Enterprises*, 428 F.Supp. 1067, 1069 (S.D.N.Y.1977).[8]

Defendants further contend that most of the relevant documents are located in the Boston area. They suggest that there is

---

7. Specifically, defendants suggest they will call a financial consultant in Boston, Mr. Ulin, who referred plaintiff to defendants; the treasurer of Stearns, Mr. Sevier, who prepared the financial data now questioned; and Ms. Piercy, the assistant treasurer who also prepared the financial data.

8. It should also be noted that relative financial hardship on litigants is a legitimate factor to consider on this motion. *Vaughn v. American Basketball Ass'n*, 419 F.Supp. 1274, 1277 (S.D. N.Y.1976). Boston is not such a distant forum as to affect plaintiff's ability to prosecute his

claims there. See *Paragon International, N. V. v. Standard Plastics, Inc.*, 353 F.Supp. 88, 92 (S.D.N.Y.1973). In fact plaintiff does not plead financial hardship. Further, a call to testify in such a forum does not present an intolerable burden for parties or witnesses; they need only stay in the forum while testifying. See *Star Lines Ltd. v. Puerto Rico Maritime Ship A.*, 442 F.Supp. 1201, 1207 (S.D.N.Y.1978).

Finally, neither side has demonstrated that any of its proposed witnesses, if outside the subpoena power of the court, would not in fact attend voluntarily.

extensive documentary proof which is under the jurisdiction and control of the Bankruptcy Court in Boston (Thayer Affidavit ¶ 16), and further that Stearns' records, because it is not a party to this action, are beyond the subpoena power of this court. Defendants conclude that even if these records are subject to process, the difficulty in obtaining them from their current custodian in Boston militates in favor of transfer. Plaintiff responds by stating that the documents on which the action is based are in New York and that the books and records of Stearns can easily be transported here. We are unwilling to endorse either argument without supporting affidavits.

■ The last two factors to be considered take on paramount importance and are dispositive of this motion. Where the operative facts of the case have no material connection with this district, plaintiff's choice of forum carries less weight. *Credit Alliance Corp. v. Nationwide Mutual Insurance Co.*, 433 F.Supp. 688 (S.D.N.Y.1977); *Foster v. Litton Industries, Inc.*, 431 F.Supp. 86, 87 (S.D.N.Y.1977). Although plaintiff's residence is not an insignificant consideration, this action involves the sale of stock of a Massachusetts corporation, apparently doing business solely in Massachusetts. The events which led to the final agreements all took place in Massachusetts, with the exception of sporadic phone calls and letters to New York.[9] Most important, however, Massachusetts law apparently controls the substantive aspects of this suit. As mentioned at the outset, the cornerstone of defendants' position is that the agree-

ments are separate and independent. In the view we take of this case, resolution of this issue must be made by reference to the Massachusetts law of contracts.[10] Similarly, whether the merger clauses have the significance defendants ascribe to them must also be decided by reference to State law. In fact, the agreements provide by their own terms that Massachusetts law will apply (Thayer Affidavit ¶ 12).

■ Nor does the existence of the § 10(b) claim change the balance. The heart of the controversy is fraud alleged in the formation of these agreements and the § 10(b) claim might turn on the construction of the agreements, a matter of State law best left to courts familiar with Massachusetts law. See *Vaughn v. American Basketball Ass'n*, 419 F.Supp. 1274, 1278 (S.D.N.Y.1977); *Van Dusen v. Barrack, supra* at 644–46; *Credit Alliance Corp. v. Nationwide Mutual Insurance Co., supra; Scheinbart v. Certain-Teed Products Corp., supra* at 710.

Finally, the bankruptcy proceedings in Boston are sufficiently "related" to this action to warrant trial in the same district. See *Can-Base Productions, Ltd. v. Portrait Records*, 445 F.Supp. 777, 778 (S.D.N.Y.1978); *Star Lines, Ltd. v. Puerto Rico Maritime Ship. A.*, 442 F.Supp. 1201, 1208 (S.D. N.Y.1978); *Schneider v. Sears, supra* at 266–67. Although we are not sure exactly what weight to ascribe to these proceedings or, in fact, to the arbitration proceeding now stayed as well, the pendency of these proceedings strongly suggests the necessity of transfer in these circumstances.[11]

9. These could hardly be considered "furthering" acts within the State. See *Dale Metals Corp. v. Kiwa Chem-Industry Co., Ltd.*, 442 F.Supp. 78, 81 (S.D.N.Y.1977). Here the transaction, at best, had a tenuous connection to this district.

10. It is to be noted that both the parties and the court have referred to New York cases in addressing the issues raised on this motion. This does not suggest that New York law is identical to the relevant provisions of Massachusetts law, which in the court's view govern significant aspects of the litigation, but does highlight one difficulty to be anticipated if the action were to remain in this district. In any event,

the applicable law will not be affected by transfer. See *Van Dusen v. Barrack*, 376 U.S. 612, 84 S.Ct. 505, 11 L.Ed.2d 945 (1964).

11. We also reject plaintiff's argument based on the congestion of the court calendar in Massachusetts District Court. First, we do not credit plaintiff's unsupported hearsay reportage. See *Can-Base Productions Ltd., supra* at 779. Second, despite data suggesting the congestion of the courts in that district, it is still an open question whether the Eastern District of New York cannot also claim the dubious distinction of having one of the most congested calendars in the country.

Accordingly, defendants have clearly met their burden and thus their motion to transfer this action to the United States District Court for the District of Massachusetts is granted.

SO ORDERED.