**AIR EXPRESS INTERNATIONAL CORPORATION, Joseph L. Mailman, and Easton & Co., Plaintiffs,**

v.

**CONSOLIDATED FREIGHTWAYS, INC., and CF Air Freight, Inc., Defendants.**

**Civ. No. B 83–569(WWE).**

United States District Court, D. Connecticut.

June 13, 1984.

Richard A. Fuchs, Richard A. Bieder, Bridgeport, Conn., for Easton & Co.

Michael L. Guri, Stephen E. Ronai, Ronai, Berchem & Moses, New Haven, Conn., for AEI and Mailman.

William R. Murphy, Ronald J. Cohen, Tyler, Cooper & Alcorn, New Haven, Conn., for CF and CFAF.

## RULING ON PENDING MOTIONS

EGINTON, District Judge.

There are three motions by defendants Consolidated Freightways, Inc. ("CF") and CF Air Freight, Inc. ("CFAF") presently pending before the court: a Motion to Dismiss Plaintiffs' Second Claim for Lack of Personal Jurisdiction and Failure to Join an Indispensable Party; a Motion to Dismiss for Failure to State a Claim upon which Relief can be Granted and Lack of Subject Matter Jurisdiction; and a Motion to Stay or, in the alternative, to Transfer ("Transfer motion"). Some description of the scope of the controversy among the parties is necessary to understand the court's treatment of these pending motions.

The instant action is but one of several lawsuits arising out of the aborted merger of Air Express International Corporation ("AEI"), a domestic and international air freight forwarder, into CFAF, a domestic large freight forwarder and wholly-owned subsidiary of CF. The Agreement and Plan of Merger ("Merger Agreement"), executed on or about May 15, 1983 by AEI, CF, and CFAF,[1] set July 31, 1983 as the deadline for merger. As the deadline neared, a dispute arose over whether AEI had satisfied certain conditions precedent to the merger. The dispute was not resolved, and the merger not consumated, by the July 31 deadline.

Within the week, on August 4, 1983, the first lawsuit was instituted. CF and CFAF commenced a declaratory action against AEI in California Superior Court ("California Action") seeking a determination that they had no obligation to close the merger and that they had acted in good faith in their attempts to close the merger.

The relief sought in the California Action was considerably broadened in December, 1983 with the filing by AEI, Mailman and other named AEI shareholders of a cross-complaint against CF and CFAF. This cross-complaint, which alleges violations of

---

1. The other parties to this lawsuit are Joseph L. Mailman ("Mailman"), Chairman of the Board of Directors of AEI and one of its largest shareholders, and Easton & Co. ("Easton"), a partnership and another principal shareholder of AEI.

state law in connection with the preparation for the merger, was filed after the Superior Court denied AEI's motion to stay or dismiss the California Action.

A second California-based action was commenced on November 30, 1983 by Easton. The action has been styled as a class action in which damages are sought for alleged state law violations, including breaches of contract and of covenants of good faith and fair dealing.

This, the third pending suit ("Connecticut Action"), was filed on September 13, 1983. Unlike the other pending lawsuits, this one asserts violations of the federal securities laws as well as violations of applicable state laws. Plaintiffs AEI, Mailman, and Easton allege that defendants CF and CFAF never intended to close the merger unless certain of AEI's existing labor contracts could be avoided. According to plaintiffs, while defendants were publicly supporting the merger in proxy statements and press releases, and capitalizing on unlimited access to plaintiffs' sensitive proprietary information in preparation for the merger, they were secretly conditioning the merger on satisfactory resolution of these labor issues. Plaintiffs seek compensatory and punitive damages, and injunctions barring the continued use, and requiring the return, of sensitive information defendants amassed during the merger preparation period.

The pendency of these three lawsuits, which all have an identical factual background, suggests the need for streamlining the litigation among the parties, either along federal/state lines or along California/Connecticut lines, or both.

Upon review of each of the motions pending before it, the court determines, for the reasons set forth below, that transfer of this case to the federal district court for the Northern District of California, San Jose Division, will best serve the convenience of the parties and the equally compelling interest of the court in intelligent judicial administration.

DISCUSSION

■ Under 28 U.S.C. § 1404(a), the statutory authority for federal inter-district transfers, the court must consider the private and public interests at stake, i.e., the convenience of the parties and witnesses, and the interest of justice, in determining whether to transfer a case. *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947).

■ Plaintiffs correctly point out that their choice of Connecticut as the forum for this particular litigation is controlling unless there is a clear-cut showing that the concerns for convenience and justice override that choice. *General State Authority v. Aetna Casualty & Surety Co.*, 314 F.Supp. 422, 423 (S.D.N.Y.1970). The burden accordingly is on CF and CFAF to justify the transfer of this case to the California federal court. *See Factors Etc., Inc. v. Pro Arts, Inc.*, 579 F.2d 215, 218 (2d Cir.1978), *cert. denied*, 440 U.S. 908, 99 S.Ct. 1215, 59 L.Ed.2d 455 (1979).

■ Defendants have carried that burden. There are three key aspects to the litigation of the disputed merger that favor transfer: 1) the denial of AEI's Stay or Dismiss motion in the California Action; 2) the filings of a cross-complaint in the California Action by AEI and Mailman and of a complaint by Easton in a separate California state court action; and 3) the applicability of California law to the interpretation of the Merger Agreement and of CF's and CFAF's conduct in preparation for the merger.

AEI and the defendants fully briefed and orally argued the convenience issue last fall when a motion by AEI to Stay or Dismiss was pending in the California Action. The Superior Court dismissed AEI's motion after considering the arguments that AEI and its co-plaintiffs have re-asserted in their opposition to the transfer motion in this case. *Exhibit C to Affidavit of Samuel R. Miller in Support of Defendants' Transfer Motion.*

It is significant that in reaching its decision, the California Superior Court was

called upon to compare and weigh the convenience of litigating in California as opposed to litigating in Connecticut in this action. Thus, the effect of the decision of the court in the California Action, while not preclusive, is certainly persuasive on the convenience issue.

AEI's filing in December, 1983, of a cross-complaint in the California Action further undermines its assertions in this Connecticut Action that California is an inconvenient forum. AEI contends that its filing of the cross-complaint was compulsory under Cal.Civ.Proc.Code § 426.30 ("§ 426.30"), and thus not indicative of a voluntary selection of California as the forum in which to present its claims. *Plaintiffs' Memorandum of Law in Opposition to Defendants' Motions to Dismiss, Stay or Transfer* ("Plaintiffs' Opposition Memorandum") at 71 n. 24. CF and CFAF contend that § 426.30 does not make cross-complaints compulsory in declaratory actions such as the California Action. *Defendants' Reply Memorandum in Support of Transfer Motion* at 2 & n. 1.

Even if the cross-complaint were compulsory, and thus not indicative of a choice to *prosecute* claims in California, the fact remains that AEI must *defend* in the California Action as a result of the denial of its Stay/Transfer motion. To conduct that defense in California, AEI must intend to have the parties, witnesses and many of the documents that it would be relying on in this matter present in California.

The inconvenience that plaintiffs seek to avoid is unavoidable because it pre-exists,

and will survive, any decision this court renders on the Transfer Motion.

The same unavoidable inconvenience afflicts AEI's co-plaintiffs. Mailman and Easton claim that they filed their respective claims in California "to protect themselves and the class in the event that the breach of contract claims go to trial first in the California action." *Plaintiffs' Opposition Memorandum* at 72 n. 24. Whatever their reason, these parties, like AEI, must also intend to pursue diligently their claims in California and produce parties, witnesses and documents there.[2]

Notwithstanding the ongoing nature of the state cases in California, the plaintiffs also want this federal action to proceed in Connecticut, on the theory that if it, the most comprehensive of all pending suits, reaches trial first, then all the other suits will be pre-empted.[3]

Plaintiffs would therefore have all the pending suits proceed, all parties and witnesses engaged, and all relevant documents produced, simultaneously, until one of the actions goes to trial. Depending on which action wins the race that plaintiffs propose, the survival of the other actions would be determined.

The court cannot conceive of an arrangement more expensive, time consuming, and inconvenient to the parties plaintiff as well as defendant, or more exhaustive of judicial resources, than that advanced by the plaintiffs. The concurrent prosecution of these suits on opposite coasts would defeat the public and private interests in the most

---

**2.** This is especially true for Easton, whose motion for class certification in its suit against CF and CFAF was granted by the California Superior Court on May 24, 1984. Letter from William R. Murphy to The Honorable Warren W. Eginton (June 6, 1984).

**3.** The converse may also be true. If the California Action reaches trial first, its construction of the Merger Agreement according to state law could well determine the federal securities claims. *See Goodman v. Schmalz,* 80 F.R.D. 296, 302 (E.D.N.Y.1978). While plaintiffs' theory may be correct, the court is mystified by the logic of plaintiffs' conclusion that the theory can only work if the federal action remains in Con-

necticut. *See Plaintiffs' Opposition Memorandum* at 72 n. 24. The act of transferring this case, in and of itself, would have no effect on the comprehensive qualities of the case.

The logic of plaintiffs' argument on this point is further confused in their June 8 *Sur-Reply Memorandum of Law in Opposition to Defendants' Motion to Transfer* ("Sur-Reply Memorandum"). Plaintiffs have argued that trial first in the federal court would likely pre-empt related state court trials. Yet they also speak of the inconvenience that will be caused by the two trials of this dispute, one in federal court, and one in the state courts. *Sur-Reply Memorandum* at 2, 4, 7.

expeditious and inexpensive litigation. *Gulf Oil, supra,* 330 U.S. at 508, 67 S.Ct. at 843. If this action is to proceed simultaneously with the state cases in California, a decision which the court believes the transferee federal court should be allowed to make, they must so proceed in one location.[4]

Finally, the applicability of California law to the construction of the Merger Agreement is a factor weighing heavily in favor of transfer. The federal claims in this suit may stand or fall on a construction of the Merger Agreement, which by its terms is governed by California law. State law claims in federal actions are best committed to a federal court familiar with the applicable state law. *Scheinbart v. Certain-Teed Products Corp.,* 367 F.Supp. 707, 710 (S.D.N.Y.1973); *see Gulf Oil, supra,* 330 U.S. at 509, 67 S.Ct. at 843; *Vaughn v. American Basketball Association,* 419 F.Supp. 1274, 1278 (S.D.N.Y. 1976).

For the foregoing reasons, the court will GRANT the defendants' transfer motion, and DENY all other pending motions without prejudice to renewal in the transferee court. This decision leaves unresolved the questions about concurrent federal court involvement in this dispute. Whether plaintiffs have stated federal claims, and if so, whether the litigation of those claims should be stayed pending disposition of the California state actions, are questions that the transferee court should have the opportunity to decide. The motions addressed to these questions have been fully briefed, and will be presentable in that form to the California federal court should counsel see fit to renew them there.

IT IS SO ORDERED.

---

4. Plaintiffs cite *Dow Jones & Co. v. Chicago Board of Trade,* 539 F.Supp. 190, 193 (S.D.N.Y. 1982) for the proposition that related proceedings in the transferee forum must also be federal civil proceedings so that the option of consolidation can be exercised. Consolidation is the ideal, but not the only, method of conserving resources of the parties and the courts. Under the circumstances of this case, transfer is far preferable to simultaneous litigation on opposite coasts. Moreover, the denial of the transfer motion in *Dow Jones* was premised in part on factors not present here, such as the questionable applicability of the state law of the transferee forum and the predominance of federal claims. *Id.* at 192. Even if the California federal court should decide not to stay its proceedings, coordination of pre-trial discovery will be enhanced by the pendency of all suits in one location.